*163
 
 OPINION OF THE COURT
 

 Smith, J.
 

 The primary issue before this Court is whether the Legislature has the constitutional authority to assign to the Comptroller the power to conduct audits of private health insurance corporations which are subject to substantial State regulation. We hold that the plain language of the New York State Constitution prohibits the Legislature from doing so. Despite the broad authority given to the Legislature to delegate duties to the Comptroller, such powers may not abrogate constitutionally defined limitations. The order of the Appellate Division so holding should therefore be affirmed.
 

 Plaintiffs are private not-for-profit health insurance providers organized under Insurance Law article 43. That article, titled "Non-Profit Medical and Indemnity, or Health and Hospital Service Corporations,” contains requirements for establishing, controlling and administering nonprofit health insurance corporations. According to defendants, "these corporations are generally non-profit entities organized to furnish medical expense indemnity and hospital service coverage.”
 

 The Superintendent of Insurance, as the head of the Insurance Department of the State of New York, has been given full authority to supervise and regulate the business of insurance in this State (Insurance Law §§ 201, 301). The responsibility to conduct independent management and financial audits of corporations organized under Insurance Law article 43 was given to the Superintendent of Insurance by legislation enacted in 1992 (L 1992, ch 501, § 12;
 
 see,
 
 Insurance Law § 4308 [d], [e]).
 

 In April 1993, the Legislature passed a budget bill which gave the State Comptroller the same authority as the Superin
 
 *164
 
 tendent of Insurance to conduct management and financial audits of not-for-profit health insurers in New York (L 1993, ch 50). These audit powers were extended by legislation enacted in April 1994 (L 1994, ch 50). The Legislature appropriated special funding to pay for these audits. In the initial bill, the funding was "deemed expenses of the insurance department” (L 1993, ch 50, [Dept of Audit and Control"Maintenance Undistributed”]). The following year, funding was again allocated to the Insurance Department but suballocated to the Comptroller (L 1994, ch 50 [Ins Dept — "Maintenance Undistributed”]).
 

 In May 1994, the Superintendent of Insurance and the State Comptroller agreed to a plan concerning the scope of article 43 audits to avoid any duplication of efforts or activities. Under the plan, the State Comptroller would "coordinate audits of Article 43 corporations with the New York State Insurance Department.” The plan required the Comptroller to give the Deputy Superintendent of Insurance notice concerning which audits would be performed, the basis for selection, and the objectives of such audits.
 

 Pursuant to this plan, the Comptroller audited plaintiffs. During the audit, the Comptroller issued subpoenas for claims records and supporting documentation which the plaintiffs objected to as burdensome. When the Comptroller refused to withdraw the subpoenas, the plaintiffs filed the instant action which challenged the legislation authorizing the audit as unconstitutional. Plaintiffs’ argument was based upon an interpretation of article V, § 1 of the New York State Constitution which states in pertinent part:
 

 "The comptroller shall be required: (1) To audit all vouchers before payment and all official accounts; (2) to audit the accrual and collection of all revenues and receipts; and (3) to prescribe such methods of accounting as are necessary for the performance of the foregoing duties. The payment of any money of the state, or of any money under its control, or the refund of any money paid to the state, except upon audit by the comptroller, shall be void, and may be restrained upon the suit of any taxpayer with the consent of the supreme court in appellate division on notice to the attorney-general. In such respect the legislature shall define his powers and duties and may also assign to him: (1) supervision of the accounts of any political division
 
 *165
 
 of the state; and (2) powers and duties pertaining to or connected with the assessment and taxation of real estate, including determination of ratios which the assessed valuation of taxable real property bears to the full valuation thereof, but not including any of those powers and duties reserved to officers of a county, city, town or village by virtue of sections seven and eight of article nine of this constitution. The legislature shall assign to him no administrative duties, excepting such as may be incidental to the performance of these functions, any other provision of this constitution to the contrary notwithstanding.”
 

 Supreme Court rejected plaintiffs’ constitutional argument but quashed the subpoenas as "onerous and overly broad.” On appeal, the Appellate Division reversed and declared the statute unconstitutional as beyond the "express provision of NY Constitution, article V, § 1, which prohibits the assignment of administrative duties not incidental to the specified functions” of the Comptroller (218 AD2d 140, 144).
 

 On appeal, defendants contend that the State Constitution expressly permits the assignment of the auditing duties permitted under the Insurance Law to the Comptroller. We disagree.
 
 [1]
 

 I
 

 We note at the outset that the State Legislature has long been empowered to regulate the insurance industry through a variety of means (see,
 
 Health Ins. Assn. v Harnett,
 
 44 NY2d 302, 308). Such regulation, even down to "the minutest particular in the interest of the public, has never been questioned”
 
 (People v Formosa,
 
 131 NY 478, 484). Indeed, the organization of an insurance company and the conduct of the business of writing insurance is not a right but a privilege granted by the State subject to the conditions imposed by it to promote the public welfare
 
 (Health Ins. Assn.,
 
 44 NY2d, at 309).
 

 Not coincidentally, the administrative agency with regulatory authority for the insurance industry is the Insurance Department of the State of New York
 
 (see, Formosa,
 
 131 NY, at 483 [noting that a "department of the state government has
 
 *166
 
 been constituted to supervise” and regulate those engaged in the business of insurance]). The head of that Department, the Superintendent of Insurance, has been granted " 'broad power to interpret, clarify, and implement the legislative policy’ ” underlying the provisions of the Insurance Law
 
 (Matter of New York Pub. Interest Research Group v New York State Dept. of Ins.,
 
 66 NY2d 444, 448, citing
 
 Ostrer v Schenck,
 
 41 NY2d 782, 785).
 

 Article 3 of the Insurance Law outlines the general "Administrative and Procedural Provisions” for the Superintendent. Pursuant to his administrative powers, the Superintendent may make any "order affecting any insurer, insurance agent, insurance broker or other person subject to the provisions of this chapter” (Insurance Law § 302). The Legislature has also decreed that insurance businesses of a certain size must submit to the office of the Superintendent an annual financial statement audited by an independent certified public accountant (Insurance Law § 307). The Superintendent may also make an examination into the affairs of any insurer (Insurance Law § 309;
 
 cf., Schenck v Executive Life Ins. Co.,
 
 74 Misc 2d 12,
 
 affd
 
 42 AD2d 540) and must be given access "at all reasonable hours to the books, records, files, securities and other documents” of the insurer which are relevant to the examination (Insurance Law § 310 [a] [2]).
 
 [2]
 

 Specific procedures for article 43 audits are outlined in section 4308 of the Insurance Law. That the article 43 audits are a proper exercise of the administrative powers of the Insurance Department is conceded. It is further conceded that the Legislature has delegated duplicative auditing duties under article 43 of the Insurance Law to the Comptroller.
 

 Defendants contend that the only constitutional prohibition against the Legislature making such an assignment of duties to the Comptroller is contained in article V, § 1. That provision prohibits the assignment of "administrative duties” that are not incidental to the constitutionally defined duties of the Comptroller. All of the duties defined within article V, § 1, whether required or discretionary, are in furtherance of the fundamental duty of the office, to "[s]uperintend the fiscal concerns of the state” (State Finance Law § 8; 4 Report of 1938 New York State Constitutional Convention Committee on State and Local Government in New York, at 337).
 

 
 *167
 
 Article 43 audits are within the administrative duties of the Insurance Department. Those same duties, funded by moneys suballocated from the Insurance Department, are also "administrative duties” when performed by the Comptroller. The Constitution prohibits the Legislature from delegating administrative duties to the Comptroller that are not incidental to the supervision of the fiscal affairs of the State. That fundamental duty of the Comptroller is not served by administrative audits of private not-for-profit insurers.
 

 The conclusion is manifest: audits of corporations organized under article 43 of the Insurance Law are administrative duties which may not be delegated to the Comptroller when the Constitution prohibits the Legislature from doing so. Thus, under the plain language of article V, § 1, the administrative duties at issue here may not be delegated to the Comptroller.
 

 II
 

 Defendants seek to avoid the obvious conclusion in this case by urging a narrow construction upon the plain language of article V, § 1. According to defendants, the legislative history of the 1925 amendment to article V, § 1 demonstrates that the term " 'administrative duties’ had a well-defined meaning: it referred principally to activities involving the accrual, levying and collection of taxes and other revenues.”
 

 Prior to 1925, various tasks relating to taxing the public had devolved upon the Comptroller’s office. In 1925, as part of a major restructuring of government departments and responsibilities, the Comptroller’s duties of an "administrative nature” and concerned with the "accrual and collection of taxes and revenues” were reassigned to other departments including one that is currently known as the Department of Taxation and Finance. With the adoption of article V, § 1, the fundamental duties of the Comptroller were established. The provision also removed the Legislature’s power to assign further administrative tasks to the Comptroller that were not incidental to the defined, fundamental duties of that office. At the same time, the Legislature adopted article V, § 3, which provided, in pertinent part:
 

 "Subject to the limitations contained in this constitution, the legislature may from time to time assign by law new powers and functions to departments, officers, boards, commissions or executive offices of the governor, and increase, modify or diminish their powers and functions”.
 

 
 *168
 
 Contending that the prohibited "administrative duties” noted in article V, § 1 referred only to "nonauditing activities,” and observing that the Legislature was concurrently given a broad grant of power to assign new functions to any State department, defendants argue that the history behind the constitutional amendments permits the article 43 audits at issue.
 

 The plain language of the Constitution provides the framework for our analysis. The limits placed upon the Legislature against assigning "administrative duties” to the Comptroller were adopted notwithstanding "any other provision of [the] constitution to the contrary” (art V, § 1). Moreover, the powers given to the Legislature by article V, § 3 were "[sjubject to the limitations contained in [the] constitution.” Of course, the plain language of article V, § 1 does not support defendants’ narrow reading of the term "administrative duties.”
 

 In fact, defendants’ argument ignores the overriding principles which guided the government restructuring in 1925 — to delineate the lines of responsibility and control spiraling government costs. In listing the underlying principles for the "Proposed Plan of Retrenchment,” a bipartisan panel stated: "[b]ecause of the enormous growth in expenditures and the small prospect under present state organization and procedures of preventing excessive increases in the future, it is necessary to impress upon the people of the State the need of retrenchment and reorganization”
 
 {see,
 
 Report of Reconstruction Commission to Governor Alfred E. Smith on Retrenchment and Reorganization in the State Government [Oct. 10, 1919] [1919 Report] part I, at 3).
 

 The panel noted that the present administrative structure was "a miscellaneous collection of 187 offices, boards, commissions, and other agencies” without direct or effective supervision (1919 Report, at 6). In creating its government restructuring proposal, the panel was primarily concerned with the "retrenchment and responsibility in the government of the State of New York” which it concluded could be "achieved only through” certain steps which included (1) the consolidation of the myriad of then existing administrative departments, commissions, offices, boards and other agencies and (2) the grouping of related offices and work in each of several departments into appropriate divisions and bureaus (1919 Report, at 11). Despite such a directive, the Legislature did not simply assign all auditing duties to the Comptroller.
 

 It is important to note that the Insurance Department had long since been established and empowered to conduct audits
 
 *169
 
 and examinations of businesses and agents involved in the insurance business
 
 (see
 
 L 1892, ch 690 [Insurance Law], §§ 39, 44; L 1906, ch 326, § 10 [amending Insurance Law § 39]; L 1939, ch 882 [Insurance Law], §§ 28-29). Indeed, annual reports of State insurers were originally required to be filed with the Comptroller but were subsequently required to be submitted to the Insurance Department. As noted by Supreme Court in
 
 Case v People
 
 (6 Abb NC 151, 160,
 
 affd
 
 14 Hun 503,
 
 rev on other grounds
 
 76 NY 242):
 

 "In 1859, the legislature saw fit to change the system of the laws in relation to insurance, and instead of requiring that system to be administered by the comptroller of the State, as it hitherto had been, it created a new and independent department — denominated the insurance department * * * It will be observed that the language takes from the comptroller and carries over to the new department the execution of the laws theretofore passed, or that thereafter might be passed in relation to insurance. If we examine those laws, we discover a system for the purpose of regulating the insurance companies of the State, to be carried out previously by the comptroller, but necessarily, after the passage of the act of 1869 to be carried out by the superintendent of insurance, placed at the head of a new department”.
 

 That legislative intent is evident in the laws enacted in 1892. Section 2 of chapter 690 of the Laws of 1892 states:
 

 "There shall continue to be a separate and distinct department charged with the execution of the laws relating to insurance, to be known as the insurance department * * * All books, papers, documents, securities, stocks, bonds and mortgages, and all other papers whatever, in the office of the comptroller and in the office of the secretary of state at the time of the passage of chapter 366 of the laws of 1859, relating to the business of insurance, shall, on demand, be delivered and transferred to the superintendent, and be and remain in his charge and custody” (L 1892, ch 690, § 2;
 
 see also,
 
 L 1906, ch 326, § 1 [amending Insurance Law § 2]).
 

 As noted in the legislative reviews of the 1925 constitutional amendments, the duties of the Insurance Department remained
 
 *170
 
 unchanged following the restructuring (see, Report of State Reorganization Commission, 1926 NY Legis Doc, No. 72, at 67 [Feb. 26, 1926] ["It is recommended * * * (t)hat the Department of Insurance be continued as at present organized, with the same functions as are now provided by law”]).
 

 Thus, financial oversight of private, nonpublic insurers remained under the auspices of the Insurance Department. Under the restructuring plan, while some departments, such as the Insurance Department, would continue to conduct audits as part of their administrative duties, the Department of Audit and Control was further streamlined so that it could better perform its fundamental duty — to superintend the fiscal concerns of the State (1919 Report, at 14). As noted above, certain responsibilities of the Comptroller which had been reassigned to the Insurance Department years before were not returned to the Comptroller.
 

 In sum, defendants’ attempt to narrow the definition of the term "administrative duties” to merely nonauditing duties finds support neither in the history nor in the plain language of article V, § 1. Article 43 audits may not be delegated to the Comptroller.
 

 Ill
 

 Defendants make several arguments based upon practical concerns and public policy. For example, defendants argue that the Comptroller has substantial experience in auditing Medicaid and other State-sponsored insurance programs. Defendants offer no explanation as to why funding suballocated to the Comptroller may not be retained by the Insurance Department to perform the auditing functions it has performed for over a century.
 

 Defendants also argue that this Court should simply defer to the Legislature’s law-making power; that there is no longer a "bright line” distinction between the "public” and "private” sectors; and that "the development of New York’s health care delivery system and how services are paid for is now a matter of significant governmental concern.” Defendants’ arguments essentially boil down to a single premise: since the State is empowered to audit plaintiffs, the State auditor should be allowed to do it. Defendants do not explain how or why any of these reasons would overcome a plainly expressed constitutional prohibition against the passage of the same legislation it seeks to implement
 
 (cf., Matter of New York Pub. Interest Research Group v New York State Thruway Auth.,
 
 77 NY2d 86
 
 *171
 
 [statute impermissibly infringed upon Comptroller’s discretionary powers];
 
 Patterson v Carey,
 
 41 NY2d 714 [statute impermissibly infringed upon Comptroller’s discretionary power to supervise financial accounts of public authorities]). Simply, the Legislature may not delegate administrative duties of the Insurance Department relating to article 43 audits of private insurers when such duties are clearly administrative and not incidental to the primary function of the Comptroller.
 

 The order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Levine and Ciparick concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Defendants also argue that Supreme Court erred in striking the subpoenas as overbroad. Because we decide that the Legislature wrongly delegated article 43 auditing duties to the Comptroller, we do not reach the issue of the sufficiency of the subpoenas issued pursuant to such authority.
 

 [2]
 

 . The record contains evidence that plaintiffs were audited every three years by the Insurance Department.