[877 NE2d 643, 846 NYS2d 593]

In the Matter of ERIC R. DINALLO, as Superintendent of the New York State Insurance Department Liquidation Bureau, et al., Appellants, v THOMAS P. DINAPOLI, as Comptroller of the State of New York, Respondent.

Argued September 4, 2007; decided October 11, 2007

**POINTS OF COUNSEL**

*Davis Polk & Wardwell,* New York City (*Guy Miller Struve, Kevin C. Wallace, Joshua D. Liston* and *Shannon K. Manigault* of counsel), and *Andrew J. Lorin, General Counsel, New York Liquidation Bureau,* for appellants. I. The Liquidation Bureau is not a state agency. (*Matter of Kinney,* 257 App Div 496, 281 NY 840; *Corcoran v Hall & Co.,* 149 AD2d 165; *Corcoran v National Union Fire Ins. Co. of Pittsburgh,* 143 AD2d 309; *Matter of Ideal Mut. Ins. Co.,* 140 AD2d 62; *Matter of O'Connor v New York State Employees' Retirement Sys.,* 2 AD2d 639, 4 NY2d 795; *Matter of Bean v Stoddard,* 207 App Div 276, 238 NY 618; *Matter of Consolidated Edison Co. of N.Y. v Insurance Dept. of*

*State of N.Y.,* 140 Misc 2d 969; *Helvering v Therrell,* 303 US 218; *Maybee v State of New York,* 4 NY3d 415; *Matter of Higby v Mahoney,* 48 NY2d 15.) II. The State Constitution and the State Finance Law do not give the Comptroller the power to audit the Liquidation Bureau. (*Blue Cross & Blue Shield of Cent. N.Y. v McCall,* 89 NY2d 160; *Matter of Bean v Stoddard,* 207 App Div 276; *Saratoga Harness Racing Assn. v Agriculture & N.Y. State Horse Breeding Dev. Fund,* 22 NY2d 119; *Matter of Blaikie,* 11 AD2d 196; *Law Enforcement Ins. Co., Ltd. v Corcoran,* 807 F2d 38; *G. C. Murphy Co. v Reserve Ins. Co.,* 54 NY2d 69; *Matter of Lloyd v Grella,* 83 NY2d 537; *Matter of Kolb v Holling,* 285 NY 104; *Anderson v Regan,* 53 NY2d 356; *People v Newman,* 32 NY2d 379.) III. The Comptroller's limited reviews of the payments to the Liquidation Bureau from the insurance security funds do not authorize the sweeping audit called for by the Comptroller's subpoenas. (*Alliance of Am. Insurers v Chu,* 77 NY2d 573; *Matter of Allcity Ins. Co. [Kondak],* 66 AD2d 531; *Matter of Union Indem. Ins. Co. of N.Y.,* 92 NY2d 107.) IV. The Abandoned Property Law does not authorize the sweeping audit sought by the Comptroller. (*Matter of Temporary Comm. of Investigation of State of N.Y. v French,* 68 AD2d 681.)

*Cleary Gottlieb Steen & Hamilton LLP,* New York City (*Evan A. Davis* and *Michael J. Byars* of counsel), and *Luke Bierman,* Albany, *Helen M. Fanshawe, Albert Wm. Brooks, John K. Dalton* and *Michael E. Kupferman* for respondent. I. Because the Superintendent is a state officer in both his regulator and liquidator capacities, State Finance Law §§ 111 and 121 (2) give the Comptroller the power to conduct the audits in question. (*Matter of Sutka v Conners,* 73 NY2d 395; *Matter of Blaikie,* 11 AD2d 196; *Matter of Lawyers Mtge. Co.,* 293 NY 159; *Matter of Smith v Levitt,* 37 AD2d 418; *Saratoga Harness Racing Assn. v Agriculture & N.Y. State Horse Breeding Dev. Fund,* 22 NY2d 119; *Matter of Clark v Sheldon,* 106 NY 104; *Delaware County Elec. Coop. v Power Auth. of State of N.Y.,* 96 AD2d 154, 62 NY2d 877; *Matter of People [Casualty Co. of Am.],* 244 NY 443; *Matter of Worth Constr. Co., Inc. v Hevesi,* 8 NY3d 548; *Anderson v Regan,* 53 NY2d 356.) II. Because the Liquidation Bureau is a state agency within the meaning of the Governmental Accountability, Audit and Internal Control Act, section 8 (2-b) (a) of the State Finance Law gives the Comptroller the power to conduct the audits in question. (*Sebastian v State of New York,* 93 NY2d 790; *Serio v Ardra Ins. Co.,* 304 AD2d 362.) III. The Comptroller's exercise of his power to audit the Liquidation Bureau pursuant to State Finance Law § 8 (2-b) (a) and §§ 111 and 121 (2)

is constitutional. (*Blue Cross & Blue Shield of Cent. N.Y. v McCall,* 89 NY2d 160.) IV. The Superintendent's "parade of horribles" does not follow from the vindication of the Comptroller's audit power. (*Anderson v Regan,* 53 NY2d 356; *Matter of Consolidated Edison Co. of N.Y. v Insurance Dept. of State of N.Y.,* 140 Misc 2d 969; *Collins v Manhattan & Bronx Surface Tr. Operating Auth.,* 62 NY2d 361; *Matter of Ideal Mut. Ins. Co.,* 140 AD2d 62; *Corcoran v National Union Fire Ins. Co. of Pittsburgh,* 143 AD2d 309; *Matter of Worth Constr. Co., Inc. v Hevesi,* 8 NY3d 548.) V. Receivership of an insurance company does not remove the obligation to make payments and reports under the Abandoned Property Law to the Comptroller.

## OPINION OF THE COURT

PIGOTT, J.

The central issue on this appeal is whether the New York State Comptroller has the constitutional and/or statutory authority to audit the New York State Insurance Department Liquidation Bureau. We hold that the Comptroller does not possess such authority.

### I.

The Superintendent of Insurance serves in two distinct capacities: (1) as supervisor and regulator of New York State's insurance industry as a whole (*see* Insurance Law §§ 201, 301); and (2) as a court-appointed receiver on behalf of distressed insurers (*see* Insurance Law §§ 7402, 7404). As to the latter role, the Legislature, by statutory enactment, bestowed upon the Superintendent broad fiduciary powers to manage the affairs of distressed domestic insurers and to marshal and disburse their assets (*see Corcoran v Ardra Ins. Co.,* 77 NY2d 225, 232 [1990], *cert denied* 500 US 953 [1991]; *see also* Insurance Law §§ 7401-7436). This statutory scheme was devised for the protection of creditors, policyholders and the general public by furnishing a comprehensive mechanism for collecting the assets of a distressed insurer and paying its creditors (*see Matter of Transit Cas. Co. [Digirol—Superintendent of Ins.],* 79 NY2d 13, 19 [1992], *cert denied* 506 US 869 [1992], citing *Matter of Knickerbocker Agency [Holz],* 4 NY2d 245 [1958]).

As a court-appointed receiver, the Superintendent is authorized to either rehabilitate or liquidate a domestic insurer that meets the definition of "insolvency" as defined by Insurance Law § 1309 (*see* Insurance Law § 7402 [a]; § 7404). An order of

rehabilitation directs the Superintendent "to take possession of the property of such insurer and to conduct the business thereof, and to take such steps toward the removal of the causes and conditions which have made such proceeding necessary as the court shall direct" (Insurance Law § 7403 [a]). Should the Superintendent determine that attempts to rehabilitate a distressed insurer would be "futile," he may apply to Supreme Court for an order of liquidation (Insurance Law § 7403 [c]). Such order directs the Superintendent "to take possession of the property of such insurer," liquidate its business, "deal with such property and business of such insurer," and "give notice to all creditors to present their claims" (Insurance Law § 7405 [a]). An order of liquidation terminates the distressed insurer's existence, and the Superintendent " 'for all practical purposes takes the place of the insolvent insurer' " (*see Matter of Knickerbocker Agency [Holz]*, 4 NY2d at 251, quoting *Bohlinger v Zanger*, 306 NY 228, 234 [1954], *rearg denied* 306 NY 851 [1954]).

Upon entry of an order of liquidation, the Superintendent is "vested by operation of law with the title to all property, contracts and rights of action of such insurer" (Insurance Law § 7405 [b]). He has the discretionary authority to dispose of assets and compromise claims of a distressed insurer, pursuant to statutory claim priorities and subject to the approval of Supreme Court (*see* Insurance Law §§ 7428, 7434). Supreme Court, in turn, is charged with directing "the manner in which payments and dividends to creditors shall be made" (*Matter of Knickerbocker Agency [Holz]*, 4 NY2d at 252 [citation omitted]).

The Superintendent enforces orders of rehabilitation and liquidation through the New York State Insurance Department Liquidation Bureau (Bureau), a separate office of the Insurance Department which conducts the day-to-day operations of the distressed insurer (*see* Gillis and Calareso, *Litigators. Must Prepare for Risk that Insurers May Go Into Rehabilitation or Liquidation*, 75 NY St BJ 20 [Mar./Apr. 2003]). The Bureau routinely retains personnel from the distressed insurer to assist it in the liquidation process, a practice sanctioned by Insurance Law § 7422 (a). Such individuals are compensated "out of the funds or assets of such insurer" (Insurance Law § 7422 [b]) and are not employees of the State (*see e.g. Matter of Kinney*, 257 App Div 496, 499 [3d Dept 1939], *affd without op* 281 NY 840 [1939]; *see also Helvering v Therrell*, 303 US 218, 221, 225 [1938]).

## II.

In January 2004, the Comptroller sought to audit the financial management and operating practices of the Bureau. The Bureau rejected the Comptroller's request, asserting that the Bureau was not a "state agency" subject to oversight by the Comptroller. After several months of unsuccessful negotiations concerning the scope of the audit, the Comptroller issued nine testimonial subpoenas seeking an examination of the Superintendent and eight Bureau officials. The purpose of the audit was to: (1) "determine whether the financial management and operating practices of the Liquidation Bureau are effective in carrying out its responsibility to liquidate and settle the affairs of insolvent insurance companies"; and (2) "establish the accuracy and completeness of the abandoned property reports the Liquidation Bureau has filed with the Comptroller under the Abandoned Property Law." The Comptroller's asserted authority to audit the Bureau was premised on article V, § 1 of the New York State Constitution, the State Finance Law, and the Abandoned Property Law. Specifically, the Comptroller contended that his audit authority originated from his constitutional and statutory powers to audit all official accounts, moneys under the control of state officials, and the books, records and documents of entities required to file abandoned property reports with the Comptroller.

The Comptroller also served a subpoena duces tecum seeking production of documents concerning, among other things, the financial records of distressed insurers in liquidation and records from the Bureau's abandoned property account involving open and closed rehabilitated and liquidated estates. The Comptroller's asserted authority and purpose for the production of the documents was premised on the same constitutional and statutory authority set forth in the testimonial subpoenas.

The Superintendent[1] and the eight subpoenaed Bureau employees commenced this special proceeding to quash all 10 subpoenas, asserting that the Comptroller lacked the constitutional and statutory authority to audit the Bureau. They additionally asserted that the subpoenas issued relative to the proposed audits of abandoned property were overly broad and

---

1. This proceeding was originally commenced by then-Superintendent of Insurance Gregory V. Serio against then-Comptroller Alan G. Hevesi. Since that time, Mr. Serio has been replaced by Eric R. Dinallo, and Mr. Hevesi has been replaced by Thomas P. DiNapoli.

burdensome. In his verified answer, the Comptroller sought a declaration that he had the authority to pre-audit all Bureau expenditures and post-audit the financial management and operations of the Bureau, and that the Comptroller's power to audit encompassed all assets held by the Superintendent, including all abandoned property and abandoned property reports of open and closed insurer estates.

Supreme Court quashed the subpoenas, holding that article V, § 1 of the New York State Constitution, State Finance Law § 111 and Abandoned Property Law § 1412-a did not permit the Comptroller to pre-audit Bureau expenditures, post-audit the financial management and operations of the Bureau, or empower him to audit the property of insolvent insurers (*see Matter of Serio v Hevesi*, 9 Misc 3d 835, 841-844 [Sup Ct, NY County 2005]). In a 3-2 decision and order, the Appellate Division reversed the judgment of Supreme Court and reinstated the subpoenas, holding that the Bureau is a "state agency" and that the Superintendent, when acting as a liquidator, is a "state officer," and therefore the Comptroller had the constitutional and statutory authority to audit the Bureau (*see Matter of Serio v Hevesi*, 40 AD3d 72, 78-81 [1st Dept 2007]). The Appellate Division further concluded that the Comptroller's audit authority was "not limited to examining the . . . Bureau's handling of abandoned property" but also included the power to audit open and closed liquidation proceedings (*id.* at 82). We now reverse that order and reinstate the judgment of Supreme Court.

### III.

The Comptroller asserts that his constitutional and statutory authority to pre-audit Bureau expenditures and post-audit the financial management and operational practices of the Bureau is derived from article V, § 1 and State Finance Law § 111, respectively. Both provisions relate to the Comptroller's express authority to pre-audit certain expenditures. The Comptroller's asserted authority to post-audit is derived from his "implicit constitutional authority to post-audit payments of funds under state control and his express constitutional power to audit all official accounts."

The Comptroller's constitutional authority to pre-audit certain enumerated expenditures originates from article V, § 1, which provides, in pertinent part, that:

"The comptroller shall be required: (1) to audit all

vouchers before payment and all official accounts; (2) to audit the accrual and collection of all revenues and receipts; and (3) to prescribe such methods of accounting as are necessary for the performance of the foregoing duties. The payment of any money of the state, or of any money under its control, or the refund of any money paid to the state, except upon audit by the comptroller, shall be void, and may be restrained upon the suit of any taxpayer with the consent of the supreme court in [the] appellate division on notice to the attorney-general. In such respect the legislature shall define the powers and duties and may also assign to him or her: (1) supervision of the accounts of any political subdivision of the state . . . The legislature shall assign to him or her no administrative duties, excepting such as may be incidental to the performance of these functions, any other provision of this constitution to the contrary notwithstanding."

The aforementioned constitutional pronouncement designates the Comptroller as the "independent auditing official for the affairs of the State" (*Patterson v Carey*, 41 NY2d 714, 723 [1977]). As such, all of the duties delineated in article V, § 1, "whether required or discretionary, are in furtherance of the [Comptroller's] fundamental duty of the office, to '[s]uperintend the fiscal concerns of the state' " (*Blue Cross & Blue Shield of Cent. N.Y. v McCall*, 89 NY2d 160, 166 [1996], quoting State Finance Law § 8 [1]; 4 Rep 1938 NY St Constitutional Convention Comm, State and Local Government in New York, at 337).

In 1939, the Legislature passed what is now State Finance Law § 111, the statutory counterpart to article V, § 1, to further delineate and designate the Comptroller's pre-audit authority. That provision states that:

"*No moneys of the state*, including moneys collected in its behalf, and *no moneys in the possession, custody or control of any officer, agent, or agency of the state in his or its representative capacity*, and no moneys in or belonging to any fund or depositary, title to which is vested in the state, shall hereafter be paid, expended or refunded except upon audit by the comptroller" (emphasis supplied).

Since the passage of article V, § 1 and State Finance Law § 111, the Comptroller has, on certain occasions upon the

consent of the Bureau, post-audited the Bureau's financial management and operating practices. The first of such post-audits was conducted in 1976; prior to that time, the Bureau operated without any pre-audits or post-audits by the Comptroller. Indeed, this is the first time the Comptroller has sought to pre-audit Bureau expenditures, now contending that any moneys expended by the Bureau without a pre-audit are void. Our interpretation of the constitutional and statutory provisions before us does not support such an argument.

We now hold that because the liquidation of a distressed insurer has no impact on the state fisc, it does not implicate the Comptroller's constitutional and statutory authority to superintend the fiscal affairs of the State and therefore the Comptroller lacks the authority to audit the Bureau.[2] Specifically, neither article V, § 1 nor State Finance Law § 111 grant the Comptroller the power to audit the Bureau because assets of a distressed insurer constitute neither "money[s] of the state" nor "money[s] under [state] control."

We recognize that the statutory framework of the Insurance Law grants the Superintendent legal title to the assets of the insolvent insurer (see Insurance Law § 7405 [b]); however, equitable title remains with the distressed insurer for distribution to the creditors and policyholders (see Matter of Kinney, 257 App Div at 499). Any assets distributed by the Superintendent to creditors are derived from the estate of the distressed insurer, subject to direction of Supreme Court (see Insurance Law §§ 7428, 7434). The State has no interest in those assets and thus they do not constitute "money[s] of the state." Nor do assets of a distressed insurer constitute "money[s] under [state] control" (see generally Matter of Smith v Levitt, 37 AD2d 418 [3d Dept 1971], affd 30 NY2d 934 [1972]). Such assets are segregated from the State Treasury and are not commingled with state funds. Moreover, the assets remain under the control of the Superintendent in his capacity as liquidator of a private business, not in his public capacity as a regulator and supervisor of the insurance industry, and therefore the assets are not under state control.

---

2. This holding is not meant to imply that the Superintendent may not be subject to an independent audit. Although the Legislature does not have the authority under our holding in Blue Cross & Blue Shield to assign to the Comptroller the task of auditing the Bureau, it does have the authority to require the Bureau to retain independent auditors.

The Comptroller, citing to State Finance Law § 111, argues that the assets of a liquidated insurer constitute "moneys in the possession, custody or control" of the Superintendent "in his . . . representative capacity" as an officer of the State. We disagree. When acting as liquidator of a distressed insurer, the Superintendent operates as a statutory receiver who stands in the shoes of a private entity and "takes immediate possession and control of the assets and proceeds to a liquidation of its affairs" (*Bohlinger*, 306 NY at 234). Indeed, the Superintendent as liquidator occupies a legal status that is "separate and distinct from the Superintendent of Insurance as the public official charged with regulating the industry generally" (*Matter of Ideal Mut. Ins. Co.*, 140 AD2d 62, 67-68 [1st Dept 1988]). Thus, while the Superintendent's role as liquidator is judicial and private, his role as regulator and supervisor is administrative and public. Consequently, the Superintendent as liquidator is not a state officer but rather one who acts on behalf of a private entity.

## IV.

Nor do we agree that the Bureau is a "state agency" subject to audit by the Comptroller pursuant to State Finance Law § 8 (2-b) (a). Section 8 (2-b) (a), which was enacted as part of the State Governmental Accountability, Audit and Internal Control Act, permits the Comptroller to audit the "internal controls and operations of state agencies." A "state agency" is defined as "[a]ny . . . board, bureau, division, commission, committee, council, office or other governmental entity performing a governmental or proprietary function *for the state*" (State Finance Law § 2-a [3] [emphasis supplied]). The Bureau does not perform a governmental or proprietary function "for the state," but rather runs the day-to-day operations of private businesses in liquidation pursuant to Supreme Court order. The Bureau is not part of the Insurance Department's budget, operates without the benefit of state funds, maintains its own errors and omissions coverage, and is represented by its own private counsel, not the Attorney General, as is normally the case when a state agency is sued. Thus, the Bureau is not a "state agency" within the ambit of State Finance Law § 8 (2-b) (a). To hold otherwise would be to contravene article V, § 1's prohibition against the Legislature assigning to the Comptroller administrative tasks that are not incidental to his duty to superintend the fiscal concerns of the State (*see Blue Cross & Blue Shield*, 89 NY2d at 167).

Because the Superintendent as liquidator is neither a state officer, nor the Bureau a state agency, State Finance Law § 121 (2) does not apply to either the Superintendent or the Bureau. Section 121 (2) permits the Comptroller to audit those funds governed by State Finance Law § 4 (4), which applies to "[m]oney[s] which [have] not been given, granted, or bequeathed to the state . . . and the ownership and equitable title of which belongs to an individual or organization other than the state, but which is being held by any agency or officer of the state."

## V.

Finally, the Comptroller lacks the authority under the Abandoned Property Law to conduct the broad audit functions he seeks to implement in this case. Therefore, Supreme Court properly determined that the subpoenas issued here were overly broad.

Based on the foregoing, the Appellate Division's order should be reversed, with costs, and the judgment of Supreme Court should be reinstated.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur.

Order reversed, etc.