[871 NYS2d 497]

In the Matter of NEW YORK CHARTER SCHOOLS ASSOCIATION, INC., et al., Respondents, v THOMAS P. DINAPOLI, as Comptroller of the State of New York, et al., Appellants.

Third Department, January 15, 2009

120

---

### APPEARANCES OF COUNSEL

*Andrew M. Cuomo, Attorney General*, Albany (*Zainab A. Chaudhry* of counsel), for appellants.

*Whiteman, Osterman & Hanna, L.L.P.*, Albany (*John J. Henry* of counsel), for respondents.

*James R. Sander, New York State United Teachers*, Latham, for New York State United Teachers, amicus curiae.

### OPINION OF THE COURT

LAHTINEN, J.

The primary issue before us on appeal is whether legislation directing respondent Comptroller to audit charter schools violated NY Constitution, article V, § 1. Charter schools were authorized by laws enacted in 1998 (*see* L 1998, ch 4; Education Law art 56), and there were about 100 charter schools operating in the state when this action was commenced.[1] In 2005, legislation containing the provisions challenged by petitioners was passed and directed the Comptroller to, among other things, audit each public school district, board of cooperative educational services (commonly known as BOCES), and charter school in the state by the end of March 2010 (*see* L 2005, ch 267; *see also* Education Law § 2854 [1] [c]; General Municipal Law § 33 [2]).[2]

The Comptroller contacted various charter schools to schedule audits and, while some went forward with audits, many of

---

1. The total number of charter schools permitted was originally limited to 100 (*see* L 1998, ch 4, § 1), and that number was increased in 2007 to 200 (*see* L 2007, ch 57, part D-2, § 2; Education Law § 2852 [9]). There reportedly are a total of over 830 school districts, boards of cooperative educational services, and charter schools in New York, with many new charter schools scheduled to open this school year (*see e.g.* Gootman, *18 New Charter Schools to Open in September, Bloomberg Announces*, New York Times, Aug. 19, 2008, section B, at 2).

2. While these educational entities were previously (and still are) required to have independent audits, significant financial irregularities discovered in some school districts in 2004 revealed the need for a further layer of review with regard to the billions of dollars spent on education (*see* Mem of Assembly

the charter schools responded by raising a threshold legal issue regarding the Comptroller's authority to audit them. Although the disagreement initially focused on the scope of the proposed audits (i.e., performance audits versus financial audits), the charter schools eventually took the position that the Comptroller could not—consistent with the constitution—conduct any audits of them.[3] Eventually, petitioners—a consortium of various charter schools—commenced this combined declaratory judgment action and CPLR article 78 proceeding seeking a declaration that the subject legislation violated NY Constitution, article V, § 1 and to permanently enjoin the Comptroller from auditing charter schools.

Respondents moved for summary judgment. Supreme Court denied respondents' motion and determined that, to the extent General Municipal Law § 33 (2) and Education Law § 2854 (1) (c) authorized the Comptroller to audit charter schools, such statutory provisions violated NY Constitution, article V, § 1 (20 Misc 3d 235 [2008]). Supreme Court permanently enjoined the Comptroller from auditing charter schools (id. at 272-273). Respondents appeal.

Respondents argue that the relevant statutes authorizing the disputed audits are supported by three grounds under NY Constitution, article V, § 1: first, that audits of charter schools are incidental to the Comptroller's authority to supervise the accounts of public school districts; second, that charter schools should be characterized as political subdivisions of the state and, as such, are subject to audit by the Comptroller; and, third, that charter school audits are incidental to the Comptroller's authority to audit vouchers before payment and official accounts. They further assert that, if they are correct in their contention that charter schools are political subdivisions, then charter schools lack capacity to maintain a constitutional action against the state (see City of New York v State of New York, 86 NY2d 286, 293-294 [1995]). Finding merit to respondents' argument that charter school audits are incidental to supervising accounts of public school districts, we reverse upon such ground, and the remaining issues are thus academic.

in Support, 2005 McKinney's Session Laws of NY, at 2157-2158; Budget Rep on Bills, Bill Jacket, L 2005, ch 267).

3. The issue of the scope of the audits by the Comptroller (which has been eclipsed by the issue of whether any audits can be conducted) is not before us. It is undisputed that the Board of Regents has broad oversight power with regard to charter schools (see Education Law § 2853 [2]).

Statutes carry a strong presumption of constitutionality, and judicial interpretations that result in statutes being unconstitutional should be avoided if at all possible (*see LaValle v Hayden*, 98 NY2d 155, 161 [2002]). Accordingly, a party challenging a statute on constitutional grounds faces a burden of demonstrating such a defect beyond a reasonable doubt (*see Dalton v Pataki*, 5 NY3d 243, 255 [2005], *cert denied* 546 US 1032 [2005]; *LaValle v Hayden*, 98 NY2d at 161). NY Constitution, article V, § 1 provides, in relevant part, as follows:

> "The comptroller shall be required: . . . to audit all vouchers before payment and all official accounts . . . In such respect the legislature shall define the powers and duties and may also assign to him or her: . . . supervision of the accounts of any political subdivision of the state . . . The legislature shall assign to him or her no administrative duties, excepting such as may be incidental to the performance of these functions, any other provision of this constitution to the contrary notwithstanding."

This provision is the "wellspring of the Comptroller's authority" and "broadly empowers the Legislature to delegate to the Comptroller both supervision of the accounts of any political subdivision of the [s]tate and administrative duties incidental thereto" (*Matter of McCall v Barrios-Paoli*, 93 NY2d 99, 105 [1999]). Succinctly stated, "the fundamental duty of the [Comptroller is] to [s]uperintend the fiscal concerns of the state" (*Blue Cross & Blue Shield of Cent. N.Y. v McCall*, 89 NY2d 160, 166 [1996] [internal quotation marks and citations omitted]).

While the Legislature's authority to delegate tasks to the Comptroller is broad, it is not without boundaries since NY Constitution, article V, § 1 "prohibit[s] . . . the Legislature assigning to the Comptroller administrative tasks that are not incidental to [the Comptroller's] duty to superintend the fiscal concerns of the [s]tate" (*Matter of Dinallo v DiNapoli*, 9 NY3d 94, 103 [2007]). In *Dinallo*, the Court of Appeals held that it was improper to direct the Comptroller to audit the Liquidation Bureau of the Insurance Department. The Court noted many factors, including that "the liquidation of a distressed insurer has no impact on the state fisc" (*id.* at 102), and further that "[t]he Bureau does not perform a governmental or proprietary function 'for the state,' but rather runs the day-to-day operations of private businesses in liquidation[,] . . . [it] is not part

of the Insurance Department's budget, [and it] operates without the benefit of state funds" (*id.* at 103). Similarly, in *Blue Cross & Blue Shield of Cent. N.Y. v McCall* (89 NY2d at 163), legislation assigning the Comptroller to audit private not-for-profit health insurance providers was struck down. The current case has key factual differences from *Dinallo* and *Blue Cross*. Two important differences are that this case involves the compelling governmental function of providing public education and directly implicates vast expenditures of taxpayers' money.

"The education of the youth of the [s]tate has always been recognized as one of the principal obligations of an American [s]tate" (*Matter of College of City of N.Y. v Hylan*, 205 App Div 372, 379 [1923], *affd* 236 NY 594 [1923]). It is a core governmental function of express constitutional magnitude in this state (*see* NY Const, art XI, § 1; *Campaign for Fiscal Equity v State of New York*, 100 NY2d 893, 901-902 [2003]; *Reform Educ. Fin. Inequities Today [R.E.F. I.T.] v Cuomo*, 86 NY2d 279, 283-284 [1995]). Efforts at fulfilling this obligation have historically been made through public school districts. In 1998, the Legislature determined to broaden the options by adding the alternative of charter schools. Charter schools, while operating independently of existing school districts, nevertheless retained characteristics that placed them squarely within the state's public school system. Indeed, among the explicit purposes of the New York Charter Schools Act of 1998 was to "[p]rovide parents and students with expanded choices in the types of educational opportunities that are available *within the public school system*" (Education Law § 2850 [2] [e] [emphasis added]; *see* Education Law § 2853 [1] [c]). It was also made clear that "[t]he powers granted to a charter school under this article constitute the performance of essential public purposes and governmental purposes of this state" (Education Law § 2853 [1] [d]).

One of the largest single categories of expenditures by the state is the billions of dollars it invests annually in public education. Charter schools receive a portion of such funds. School districts are required to pay to charter schools the entire amount of "basic tuition" (as calculated pursuant to Education Law § 3602 [1] [f]) for each student from the district attending a charter school (*see* Education Law § 2856 [1]). Since payments to charter schools are based on enrollment figures, a charter school's failure to properly document such figures (as ostensibly has occurred in some charter schools) impacts school districts

by reducing available revenue.[4] Public funding from all sources (i.e., federal, state and local) accounts for an average of over 90% of petitioners' revenue, with an average of over 80% coming through public school districts. Hence, it is apparent that petitioners not only receive considerable public funds, but those funds comprise a large percentage of their operating revenue. Moreover, much of that funding is funneled through and directly affects public school districts.

It is undisputed that public school districts are subject to audit by the Comptroller since they are considered political subdivisions of the state (see Village of Kenmore v County of Erie, 252 NY 437, 442 [1930]; Herman v Board of Educ. of Union School Dist. No. 8, Town of Arcadia, Wayne County, 234 NY 196, 202 [1922]). Charter schools, although clearly accorded considerable latitude not available to public school districts in order to advance their ability to achieve the unique role for which they were established (see e.g. Education Law § 2854 [1] [b]), nevertheless maintain a statutorily established relationship with public school districts regarding, among other things, funding (see e.g. Education Law § 2856). Also, for a charter school to be established, it must receive approval from a school district board of education, the board of trustees of the state university, or the board of regents (see Education Law § 2851 [3]) and, in the event one is closed, its assets and records may end up in a public school district (see Education Law § 2851 [2] [t]). Significantly, charter schools must be nonsectarian, they cannot charge tuition, and "[a]ny child who is qualified . . . for admission to a public school is qualified for admission to a charter school" (Education Law § 2854 [2] [b]). Hence, while allowed leeway from a host of regulations and permitted to be different in sundry ways from public school districts, charter schools retain many of the quintessential characteristics of public school districts and are part of this state's current public school system.

In summary, charter schools, like public school districts, perform an important public function, and the significant public funding they receive is linked to and has an impact upon public school districts. In light of the Legislature's broad delegatory authority regarding the Comptroller (see Matter of McCall v Barrios-Paoli, 93 NY2d at 105) and the enormous public fund-

---

4. We are not suggesting—as indicated in the dissent—that overstating the number of students was the only (or even the paramount) reason for the audit requirement. The legislative history, as well as the record, reflect that a variety of abuses by a minority of schools led to the legislation.

ing involved which implicates the Comptroller's fundamental duty to supervise state fiscal matters (*see Matter of Dinallo v DiNapoli*, 9 NY3d at 101), as well as the strong presumption of the constitutionality of statutes, we are unpersuaded that the Legislature violated NY Constitution, article V, § 1, when it directed audits of charter schools by the Comptroller.

ROSE, J. (dissenting). I respectfully dissent. I cannot agree with the majority's conclusion that the audits of charter schools prescribed by the statutes at issue here are incidental to respondent Comptroller's supervision of the accounts of public school districts. In my view, the auditing duties imposed upon the Comptroller by Education Law § 2854 (1) (c) and General Municipal Law § 33 (2) far exceed what would be reasonably incidental to the supervision of school districts and, thus, the Legislature violated NY Constitution, article V, § 1 by enacting those statutes.

The NY Constitution clearly limits the Legislature's authority to define the powers of, or assign administrative duties to, the Comptroller except as may be incidental to the supervision of the accounts of political subdivisions (*see* NY Const, art V, § 1; *Matter of Dinallo v DiNapoli*, 9 NY3d 94, 100-101 [2007]; *Matter of Worth Constr. Co., Inc. v Hevesi*, 8 NY3d 548, 552 [2007]; *Patterson v Carey*, 41 NY2d 714, 723-724 [1977]), such as school districts (*see* General Municipal Law § 100 [1]; *Matter of Pawling Cent. School Dist. v New York State Educ. Dept.*, 3 AD3d 821, 825 [2004]). By enacting General Municipal Law § 33 (2) and Education Law § 2854 (1) (c) (*see* L 2005, ch 267), the Legislature directed the Comptroller to audit a charter school as comprehensively as he audits a political subdivision.

A charter school, however, is not a political subdivision, but an "independent and autonomous public school" (Education Law § 2853 [1] [c]) which is incorporated by the New York State Board of Regents as a not-for-profit "education corporation" (Education Law § 2853 [1] [a]; *see* Education Law § 216-a [2]). Charter schools also are deemed to be "nonpublic schools" for certain purposes (*see* Education Law § 2853 [4]), and they receive public funds only indirectly through tuition paid by local school districts. Unlike school districts and other political subdivisions, charter schools have no taxing authority, their budgets are not publicly voted upon, they are not governed by publicly elected boards or officials, and there are no limitations on the geographical areas they serve. Furthermore, charter schools are not included in the statutory definition of a "politi-

cal subdivision" (*see* General Municipal Law § 100 [1]; *see also French v Board of Educ. of Three Vil. Cent. School Dist. of Brookhaven & Smithtown*, 72 AD2d 196, 198 [1980]).

Inasmuch as charter schools are not political subdivisions, the Legislature lacks the authority to require the Comptroller to audit them except as may be incidental to the Comptroller's supervision of the accounts of school districts. Although the Court of Appeals has stated that NY Constitution, article V, § 1 "broadly empowers" the Legislature to delegate administrative duties incidental to supervision of a political subdivision (*Matter of McCall v Barrios-Paoli*, 93 NY2d 99, 105 [1999]), the Court also recognized that section 1 of article V was intended to protect the independent character of the Comptroller's audit function by limiting what "incidental" duties may be delegated (*see id.* at 105-106). Significantly, the duties delegated must be reasonably related to the supervision of the accounts of the political subdivision (*see Matter of Dinallo v DiNapoli*, 9 NY3d at 100-101).

Here, the Legislature imposed the same range of duties for charter schools as the Comptroller is directed to perform in auditing school districts, thereby requiring comprehensive reviews that are patently unrelated to the supervision of the accounts of school districts. Charter schools receive public funds only indirectly from school districts, and the funds that they properly earn are no longer "moneys in the possession, custody or control of the [s]tate" within the auditing mandate of NY Constitution, article V, § 1 (*Matter of Blaikie*, 11 AD2d 196, 204-205 [1960]). If, as the majority notes, it was primarily the overstatement of the number of students being educated by some charter schools that led to their inclusion in General Municipal Law § 33 in 2005, then an audit limited to those charter schools' enrollment records in the course of the Comptroller's preaudit of school district tuition payments would suffice to ensure that charter schools are correctly billing the districts and actually providing services to the number of students listed in the district's records. Performance audits of the educational merit of the services rendered by charter schools, their financial dealings with entities other than public schools or any other unrelated aspect of their operations cannot reasonably be incidental to determining whether school districts are paying only for services actually rendered. Those unrelated aspects of charter schools are already overseen by the Board of Regents and regular independent audits as authorized in Education Law § 2853

(2) and § 2854 (1) (c). In addition, any further concerns or perceived abuses could be reviewed under the Comptroller's existing authority conferred by NY Constitution, article X, § 5. Thus, I would hold that the Legislature has assigned duties to the Comptroller that are unrelated to the audit of school districts in violation of NY Constitution, article V, § 1 (*see Blue Cross & Blue Shield of Cent. N.Y. v McCall*, 218 AD2d 140, 145 [1996], *affd* 89 NY2d 160 [1996]).

Accordingly, I would affirm Supreme Court's order and judgment.

PETERS, J.P., KANE and KAVANAGH, JJ., concur with LAHTINEN, J.; ROSE, J., dissents in a separate opinion.

Ordered that the order and judgment is reversed, on the law, without costs, petition/complaint dismissed and it is declared that the challenged statutes have not been shown to be unconstitutional.