(December 2, 2008)

■ The People of the State of New York, by Andrew M. Cuomo, Attorney General of the State of New York, Respondent, v Marcus Garvey Nursing Home, Inc., Appellant. [867 NYS2d 676]—

Tom, J.P., and Williams, J., concur in a separate memorandum by Tom, J.P., as follows: The Attorney General issued the subject subpoena in the course of an investigation of financial impropriety and mismanagement at respondent nursing home, as well as possible patient abuse (*see* Public Health Law § 2803-c). The Attorney General's office is empowered to apply to enjoin such fraudulent or illegal activities, to take proof and to issue subpoenas "[i]n connection with any such application" (Executive Law § 63 [12]). The Health Insurance Portability and Accountability Act of 1996 (HIPAA) (42 USC § 1320d *et seq.*) authorizes the production of medical records where they are reasonably related to a "legitimate law enforcement inquiry" (45 CFR 164.512 [f] [1] [ii] [C] [1]; *see Matter of La Belle Creole Intl., S.A. v Attorney-General of State of N.Y.*, 10 NY2d 192, 196-197 [1961]).

We agree with Supreme Court that when investigating possible violations of law at a health related facility (*see e.g.* 42 USC § 1320a-7b), the Attorney General's office functions as a "health oversight agency" within the meaning of HIPAA (45 CFR 164.501, 164.512 [d]). The Attorney General has demonstrated "authority, relevancy, and some basis for inquisitorial

action" (*Matter of A'Hearn v Committee on Unlawful Practice of Law of N.Y. County Lawyers' Assn.*, 23 NY2d 916, 918 [1969], *cert denied* 395 US 959 [1969]), and except where "the futility of the process to uncover anything legitimate is inevitable or obvious or where the information sought is utterly irrelevant to any proper inquiry" a subpoena will not be quashed (*Anheuser-Busch, Inc. v Abrams*, 71 NY2d 327, 331-332 [1988] [internal quotation marks and citations omitted]). Finally, we note that the requirement of Executive Law § 63 (12) that a party under investigation "engage in repeated fraudulent or illegal acts" refers to the party operating the business, here respondent nursing home, not to a person in its care. While the subpoenaed records involve incidents of patient misconduct, they reflect respondent's failure to protect the rights guaranteed to patients under Public Health Law § 2803-c. Thus, we regard the incidents as relevant to, and indicative of, the overall pattern of mismanagement under investigation, not as mere isolated lapses in patient care.

Nardelli and McGuire, JJ., concur in a separate memorandum by McGuire, J., as follows: I agree with Justice Tom's concurrence that the order of Supreme Court should be affirmed, but reach that conclusion for different reasons.

Justice Tom's concurrence upholds the issuance of the subpoenas solely on the ground of the Attorney General's authority under Executive Law § 63 (12). I would not rely on that statute. The Attorney General argues that Executive Law § 63 (12) is not limited to consumer fraud cases, and I do not quarrel with the argument at that level of generality. But it is far from obvious that the Attorney General's authority under Executive Law § 63 (12) is so sweeping as to authorize the issuance of subpoenas to respondent seeking the medical records of four residents relating to two incidents of, as the Attorney General characterizes it in his brief, "sexually aggressive behavior" by two of the four residents. More particularly, I have serious doubts that these two incidents satisfy the statute's requirements of either "repeated . . . *illegal acts*" or "persistent . . . *illegality*" (Executive Law § 63 [12] [emphasis added]).*

Notably, the Attorney General does not venture any explanation of the "illegal" character of the "sexually aggressive behavior" engaged in by the two residents. If the Attorney General's authority under this statute is so sweeping, it would appear that the Attorney General could issue subpoenas to any

---

* The Attorney General does not rely on his authority under Executive Law § 63 (12) to seek relief on account of "repeated *fraudulent* . . . acts" or "persistent *fraud*" (emphasis added).

hospital or nursing home whenever he had reason to believe that two patients had been harassed by another patient or that one patient had twice been harassed by another patient. Moreover, under the Attorney General's view of his powers under Executive Law § 63 (12), it appears to be irrelevant that the ostensibly "illegal" conduct was not committed by the party being investigated. That is hard to square with the terms of the statute, which authorizes the Attorney General to bring suit and investigate "[w]henever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business" (Executive Law § 63 [12]). Although it is not clear what conduct would satisfy the requirements of repeated illegal acts or persistent illegality under the Attorney General's view, presumably the Attorney General does not contend that two instances of patient neglect or negligent medical care occurring in a hospital or nursing home would be sufficient.

Justice Tom's concurrence, however, apparently embraces that extraordinary contention. It first correctly recognizes that "the requirement of Executive Law § 63 (12) that a party under investigation 'engage in repeated fraudulent or illegal acts' refers to the party operating the business, here respondent nursing home, not to a person in its care." It then goes on to state that the two "incidents of patient misconduct" establish the requisite illegal acts by respondent because they "reflect respondent's failure to protect the rights guaranteed to patients under Public Health Law § 2803-c." Presumably Justice Tom is referring to paragraph (h) of section 2803-c (3), which provides in relevant part that "[e]very patient shall be free from mental and physical abuse." I respectfully submit that it is far from obvious that any nursing home or hospital in this state engages in "illegal acts" within the meaning of Executive Law § 63 (12) whenever, over some indefinite but perhaps protracted period of time, a patient commits two acts, or two patients each commit one act, that can be characterized as "mental [or] physical abuse."

Instead, I would uphold the validity of the subpoenas under N-PCL 112 (b) (6). The subpoenas are part of a broader investigation—one respondent concedes is proper—into financial and governance issues. In litigating his motion to compel compliance with the subpoenas and the cross motion to quash, the Attorney General made a strong showing of significant financial and governance irregularities. At least under these circumstances, in pursuing his investigation into both possible mismanagement by respondent's board members and officers

and diversion of charitable funds from its mission as a nursing home, the Attorney General is entitled to assess the extent to which mismanagement and misuse of charitable funds may have resulted in compromised patient care. Determining the scope of the harm done, after all, may inform and thus is relevant to a decision by the Attorney General concerning the appropriate remedial measure (*see* N-PCL 112 [a] [authorizing various remedial measures in an action or special proceeding brought by the Attorney General under the N-PCL]).

N-PCL 112 (b) (6) provides that "[i]n connection with any such *proposed* action or special proceeding [authorized by N-PCL 112 (a)], the attorney-general may . . . issue subpoenas in accordance with the civil practice law and rules" (emphasis added). *Matter of Abrams v Alliance For Progress* (136 Misc 2d 1022, 1025 [1987]), which respondent relies on, states in dicta that the Attorney General's authority to issue subpoenas under N-PCL 112 (b) (6) "presuppose[s] a decision by the Attorney-General to bring the proceedings to the adjudicative stage." In my view, however, the Attorney General's authority to issue subpoenas under N-PCL 112 (b) (6) does not depend on an antecedent decision actually having been made to commence one of the specified actions or special proceedings. The word "proposed" certainly does not require the conclusion that such a decision must have been made, and the statute does not state that the Attorney General may issue subpoenas "in connection with any such action or special proceeding that has been commenced." To condition the Attorney General's authority to issue a subpoena on an antecedent decision to commence one of the specified actions or proceedings would at least sometimes cause the Attorney General to commence or decide to commence an action or proceeding before being satisfied that doing so was appropriate. For these reasons, and because of the broad scope of the Attorney General's authority over not-for-profit corporations (*see Matter of McDonell*, 195 Misc 2d 277, 278-279 [2002]), I would construe the word "proposed" to mean "potential."

I also would reject respondent's argument, advanced as an independent ground for reversal, that the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (42 USC § 1320d *et seq.*) forbids it from disclosing to the Attorney General the medical records sought by the subpoena. The Attorney General argues that HIPAA does not bar disclosure of the records sought for two reasons: because the Department of Law is a "health oversight agency" as that term is defined by the relevant regulation (45 CFR 164.501), and the Attorney General is a "law enforcement official" within the meaning of the same regula-

tion. Under that regulation, a "law enforcement official" is "an officer or employee of any agency or authority . . . empowered by law to . . . [i]nvestigate or conduct an official inquiry into a potential violation of law" or to "[p]rosecute or otherwise conduct a criminal, civil, or administrative proceeding arising from an alleged violation of law." (*Id.*)

Respondent expressly states in its reply brief that it "does not dispute that the Attorney General is a 'law enforcement official' within the meaning of HIPAA." It contends, however, that it nonetheless may not disclose the medical records because they are not "relevant and material to a legitimate law enforcement inquiry" (45 CFR 164.512 [f] [1] [ii] [C] [1]). Thus, this argument is not an independent ground for reversal but rather collapses into respondent's challenge to the legitimacy of the investigation that resulted in the subpoenas. As that challenge is without merit, respondent's contention that HIPAA precludes compliance with the subpoenas also is without merit. As respondent's reliance on the disclosure prohibitions of HIPAA is easily disposed of on this ground, I would not decide the less simple question of whether the Department of Law is a "health oversight agency."