■ In the Matter of MARTIN H. HANDLER, M.D., P.C., Respondent, v THOMAS P. DINAPOLI, as Comptroller of the State of New York, Appellant, et al., Respondent. [932 NYS2d 204]—

Mercure, J.P.

The New York State Health Insurance Program provides health insurance coverage to employees and retirees of various governmental entities, as well as their dependents. The Department of Civil Service contracts with respondent United Healthcare Insurance Company of New York to provide medical and surgical benefits under the Empire Plan, the program's primary insurance option (*see* Civil Service Law §§ 162, 167). United, in turn, processes and pays for insurance claims made under the Empire Plan, using premium payments made by the state (*see* Civil Service Law § 167 [6], [7]).

Empire Plan members may be treated by participating or nonparticipating providers. Participating providers accept a set allowance remitted directly to them by United and a nominal co-payment made by the member as payment in full. In contrast, members must submit a claim to United for services rendered by nonparticipating providers and must meet an annual deductible before any reimbursement will be made. United thereafter pays the member 80% of the actual fee or the "customary and reasonable charge" for the service provided, whichever is less. The member then directly pays the nonparticipating provider, which is responsible for collecting the remaining 20% of the fee from the member.

The nonparticipating provider, moreover, is obliged to seek collection of the remaining 20% of the fee as a general business practice. Indeed, a nonparticipating provider's failure to do so could subject it to civil and criminal penalties for insurance fraud (*see* Insurance Law § 403 [c]; Penal Law § 176.05 [2]) because routine waivers of out-of-pocket costs to members effectively lower the customary fee charged. The amount sought in the claim for services is, thus, artificially inflated when co-payments are routinely waived, causing overpayment by United and the state (*see* Ops Gen Counsel NY Ins Dept No. 05-04-07 [Apr. 2005]; Ops Gen Counsel NY Ins Dept No. 04-02-25 [Feb. 2004]; Ops Gen Counsel NY Ins Dept No. 03-04-09 [Apr. 2003]).

Petitioner, a medical practice specializing in cardiology, is one of the largest nonparticipating providers under the Empire Plan as measured by member out-of-pocket costs. In 2009, respondent Comptroller audited United's claim payments for petitioner's services to determine if petitioner had improperly waived Empire Plan members' out-of-pocket costs as a matter of course,

thereby causing overpayments of state funds. In so doing, auditors reviewed approximately 75,000 of United's payment records and found 3,364 claims for petitioner's services for which United was the primary insurer and had made payments, with members remaining liable for out-of-pocket costs. The auditors generated a random sample of 178 claims from that subset and, in order to fully review them, obtained petitioner's billing records for those claims. After analyzing those records, the Comptroller determined that petitioner had routinely and improperly waived members' out-of-pocket costs, and that United had overpaid approximately $900,000 on claims from 2004 to 2008. The Comptroller advised United to attempt to recover the overpayments, request that petitioner become a participating provider and, if it did not, take steps to prevent similar overpayments in the future.

Petitioner then commenced this combined CPLR article 78 proceeding and declaratory judgment action arguing, among other things, that the Comptroller exceeded his constitutionally delegated authority in conducting the audit (*see* NY Const, art V, § 1). Supreme Court granted the petition to the extent of setting aside the audit, and otherwise dismissed. Upon the Comptroller's appeal, we modify by reversing so much of Supreme Court's order and judgment as partially granted the petition and complaint.

The Comptroller is the "independent auditing official for the affairs of the [s]tate" and superintends its fiscal concerns (*Patterson v Carey*, 41 NY2d 714, 723 [1977]; *accord Matter of Dinallo v DiNapoli*, 9 NY3d 94, 101 [2007]; *see* State Finance Law § 8 [1]). As such, the Comptroller is empowered to conduct audits where the disbursement of state funds is involved. As relevant here, both the NY Constitution and applicable statutory authority specify that "[n]o moneys of the state, including moneys collected in its behalf, and no moneys in the possession, custody or control of any officer, agent, or agency of the state in his or its representative capacity, and no moneys in or belonging to any fund or depositary, title to which is vested in the state, shall hereafter be paid, expended or refunded except upon audit by the [C]omptroller" (State Finance Law § 111; *see* NY Const, art V, § 1).

United is provided state monies "for premium or subscription charge payments [and] for payment of health benefits to plan participants" (Civil Service Law § 167 [6]), and petitioner concedes that the Comptroller could conduct an audit of those monies prior to their disbursement to United (*see* Civil Service

Law § 167 [7]). Nevertheless, it argues that the money at issue lost the character of state funds upon transfer to United, and that a post-audit of the funds' use therefore fell outside of the scope of the Comptroller's audit authority. We disagree.

The NY Constitution directs the Comptroller "[t]o audit all vouchers before payment and all official accounts," and "to prescribe such methods of accounting as are necessary for the performance of" that duty (NY Const, art V, § 1). State funds may not be paid out "except upon audit by the [C]omptroller," and payments made without the Comptroller's imprimatur are expressly declared void (NY Const, art V, § 1; *see City of New York v State of New York*, 40 NY2d 659, 668 [1976]). As such, the Comptroller has long been viewed as having authority to confirm that payments already made were proper or, in other words, to "perform such post-audit as necessary to enable him to do an effective pre-audit" (14 Report of Temporary State Commission on Constitutional Convention, State Government, at 179 [1967]; *see Matter of 3 Lafayette Ave. Corp. v Comptroller of State of N.Y.*, 186 AD2d 301, 303 [1992], *lv denied* 81 NY2d 705 [1993]; *Matter of Carlon v Regan*, 98 AD2d 544, 546 [1984], *affd in relevant part* 63 NY2d 1011 [1984]; *Matter of Signature Health Ctr. LLC v Hevesi*, 13 Misc 3d 1189, 1191-1193 [2006]).

Contrary to petitioner's argument, the fact that state funds passed through United's hands en route to petitioner did not negate the Comptroller's audit authority to confirm that the payments made by the state were proper. As the Empire Plan's insurer, United is reimbursed in full with state funds for all claims that it has paid (*see* Civil Service Law § 167 [6], [7]). To the extent that United overpays any claims, those overpayments are charged directly to the state. Thus, as petitioner concedes, the Comptroller is required to audit the payments made to United (*see* Civil Service Law § 167 [7]). In order to determine the propriety of those payments, an examination of nonparticipating providers' billing records regarding services provided to Empire Plan members is necessarily required (*see generally* State Finance Law § 9).

Unlike the situation presented in *Matter of New York Charter Schools Assn., Inc. v DiNapoli* (13 NY3d 120 [2009])—where charter schools were not audited to examine the expenditure of public monies paid to them by school districts, but were subjected to uncircumscribed examinations of their management, operations and academic achievements (*id.* at 133)—the Comptroller does not seek to conduct a performance audit of

petitioner.\* Rather, the parties are in agreement that the Comptroller conducted only a limited, cursory review of petitioner's records. In our view, then, the Comptroller correctly asserts that this limited examination of petitioner's billing records is incidental to his mandated audit of United and, accordingly, proper (*see Matter of New York Charter Schools Assn., Inc. v DiNapoli*, 13 NY3d at 132).

While the Comptroller's remaining arguments are meritless, remittal is nonetheless required so that petitioner's challenges to the audit findings may be addressed.

Peters, Stein, Garry and Egan Jr., JJ., concur. Ordered that the order and judgment is modified, on the law, without costs, by reversing so much thereof as partially granted the petition; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

---

\* Further distinguishing this case from *Matter of New York Charter Schools Assn., Inc. v DiNapoli* (13 NY3d at 133), as well as *Blue Cross & Blue Shield of Cent. N.Y. v McCall* (89 NY2d 160, 168-169 [1996]), the parties point to no other entity that would retain oversight over its collection of the mandatory co-payments. United alone has the obligation to adjudicate claims in accordance with the design of the Empire Plan benefit structure. It is unclear that, absent oversight by the Comptroller of United's resolution of these claims, "[a]ccountability to the public is . . . secured" (*Matter of New York Charter Schools Assn., Inc. v DiNapoli*, 13 NY3d at 133).