[13 NE3d 653, 990 NYS2d 153]

In the Matter of MARTIN H. HANDLER, M.D., P.C., Appellant, v THOMAS P. DINAPOLI, as Comptroller of the State of New York, et al., Respondents.

In the Matter of SOUTH ISLAND ORTHOPAEDIC GROUP, P.C., Appellant, v THOMAS P. DINAPOLI, as Comptroller of the State of New York, et al., Respondents.

Argued March 25, 2014; decided May 6, 2014

## POINTS OF COUNSEL

*Ruskin Moscou Faltischek, P.C.*, Uniondale (*Matthew F. Didora, Mark S. Mulholland* and *Joseph R. Harbeson* of counsel), for appellants in the first and second above-entitled proceedings. I. The record overwhelmingly demonstrates that the Comptroller audited South Island Orthopaedic Group, P.C. and Martin H. Handler, M.D., P.C. II. The Comptroller's audits of South Island Orthopaedic Group, P.C. and Martin H. Handler, M.D., P.C. exceeded constitutionally defined limitations on the Comptroller's audit powers as set forth in NY Constitution, article V, § 1. (*Blue Cross & Blue Shield of Cent. N.Y. v McCall*, 89 NY2d 160; *County of Rensselaer v Regan*, 151 Misc 2d 552; *Matter of McCall v Barrios-Paoli*, 93 NY2d 99; *Matter of New York Charter Schools Assn., Inc. v DiNapoli*, 13 NY3d 120; *Patterson v Carey*, 41 NY2d 714; *Matter of Dinallo v DiNapoli*, 9 NY3d 94.)

*Eric T. Schneiderman, Attorney General*, Albany (*Zainab A. Chaudhry, Andrew D. Bing* and *Barbara D. Underwood* of counsel), for Thomas P. DiNapoli, respondent in the first and second above-entitled proceedings. I. The State Constitution and statutes authorized the Comptroller's limited examination of petitioners' billing records. (*Matter of McCall v Barrios-Paoli*, 93 NY2d 99; *Matter of Dinallo v DiNapoli*, 9 NY3d 94; *Quayle v State of New York*, 192 NY 47; *Matter of New York World's Fair 1964-1965 Corp. v Beame*, 22 AD2d 611, 16 NY2d 570; *Harvey v State of New York*, 200 Misc 233, 279 App Div 708, 303 NY 976; *Matter of Carlon v Regan*, 98 AD2d 544, 63 NY2d 1011; *Matter of Signature Health Ctr. LLC v Hevesi*, 13 Misc 3d 1189; *Matter of Elmira Bus. Inst. v New York State Dept. of Educ.*, 116 AD2d 133, 70 NY2d 758; *Matter of ASA Inst. of Bus. & Computer Tech. v McCall*, 281 AD2d 849; *Matter of Daleview Nursing Home v Axelrod*, 62 NY2d 30.) II. Alternatively, the Court should

permit United Healthcare Insurance Company of New York to pursue the Comptroller's recommendations as to petitioners even if the Court finds that the examinations were unauthorized. (*Matter of Dinallo v DiNapoli*, 9 NY3d 94; *Parochial Bus Sys. v Board of Educ. of City of N.Y.*, 60 NY2d 539; *Matter of Save The Pine Bush v New York State Dept. of Envtl. Conservation*, 289 AD2d 636; *Matter of New York Charter Schools Assn., Inc. v DiNapoli*, 13 NY3d 120; *Blue Cross & Blue Shield of Cent. N.Y. v McCall*, 89 NY2d 160; *Matter of Blossom View Nursing Home v Novello*, 4 NY3d 581; *People v Calloway*, 71 AD3d 1493; *Schneckloth v Bustamonte*, 412 US 218; *Matter of Goldin v Greenberg*, 49 NY2d 566; *Matter of Gibson v Koehler*, 165 AD2d 768.)

*Greenberg Traurig, LLP*, Albany (*Cynthia E. Neidl* and *Harold N. Iselin* of counsel), for United Healthcare Insurance Company of New York, respondent in the first and second above-entitled proceedings. The Comptroller's limited review of appellants' records was incidental to the mandatory audit of United Healthcare Insurance Company of New York and was therefore constitutional.

### OPINION OF THE COURT

RIVERA, J.

These cases require us to determine whether the State Constitution limits the State Comptroller's authority to review the billing records of private companies that provide health care to beneficiaries of a state insurance program. We find no such limitation in the Constitution.

## I

Petitioners Martin H. Handler, M.D., P.C. (Handler) and South Island Orthopaedic Group (South Island) are two medical providers whose patients include persons insured by the Empire Plan, New York State's primary health benefit plan. The Comptroller reviewed petitioners' records as part of an audit of billing practices in the health care industry for claims paid by the State. Handler and South Island challenge the Comptroller's authority to review and otherwise report on their billing practices, although they concede that New York pays 80% of the costs of petitioners' services. The Comptroller argues it has authority to review petitioners' billing records as part of its audit of state expenditures. We agree.

The New York State Health Insurance Program (NYSHIP) provides health insurance coverage to government employees,

retirees, and their dependents. The NYSHIP's primary coverage option is the Empire Plan. Under a contract with the State, respondent United Healthcare Insurance of New York (United) processes and pays claims made by Empire Plan beneficiaries. After United has processed a claim, the State covers its full cost and pays United an administrative fee. In other words, the State funds the Empire Plan as a self-insurer. United merely passes state money to the proper payees.

The Empire Plan gives members the option to choose their health care providers. The health care providers fall within two categories: participating and nonparticipating providers. The fee structure and billing arrangement vary between the two types of providers. Participating providers have an agreement with United that specifies the fees they may charge. These providers bill claims directly to United, less a patient co-pay.

By contrast, nonparticipating providers charge market rates for their services and bill the patient directly. United then reimburses the patient 80% of either the actual fee charged or the "customary and reasonable charge" for the service, whichever is lower. The patient must remit these funds to the provider, along with the remaining 20%, paid out of the patient's pocket. As with all other claims, United receives payment from the State to cover the cost of the claims. Nonparticipating providers have a legal duty to collect patients' co-payments. Although there may be business reasons not to pursue collection of any and all co-payments, failure to collect these fees can result in civil and criminal penalties for insurance fraud (*see* Insurance Law § 403 [c]; Penal Law § 176.05 [2]).

A provider's failure to collect a co-payment from an Empire Plan member inflates a claim's cost and adversely impacts the State's fisc. For example, a provider that charges $100 for a service, and who collects $80 in state money, must collect $20 from the Empire Plan member. In the event that the provider does not collect the co-payment, it has provided a medical service for $80, not $100, and the State should have paid only $64 of that cost.

## II

This appeal arises from the Comptroller's audit of nonparticipating provider claims paid by United. The Comptroller sought to examine the billing records of Handler and South Island, two nonparticipating medical providers, to determine whether they had waived Empire Plan members' co-payments.

In 2008, the Comptroller requested access to South Island's customer billing records. Without objection, South Island gave the Comptroller access to its records. Between January 2001 and October 2008, United paid 5,952 claims on services provided by South Island. The Comptroller examined a subset of 190 of these claims, which revealed that South Island routinely waived members' co-payments. From the sampling, the Comptroller identified $97,332 in overpayments, which it extrapolated to $787,134 in overpayments over the entire period.

In 2009, the Comptroller visited Handler and requested access to its customer billing records. Without objection, Handler provided access to the records. During the period 2004-2008, United paid 3,364 claims originating from Handler's practice that required a member co-payment. A random sampling of 178 claims and their underlying billing records revealed that Handler routinely waived the member's co-payment, for a total overpayment of $47,188, which the Comptroller used as a basis to calculate $903,563 in overpayments over the period. Following each review, the Comptroller prepared an audit report, which it posted to its website. Both reports included a series of recommendations to be implemented by United. The Comptroller recommended that United recover the overpaid sums of money, advise the providers of the advantages of participating in the Empire Plan, and contact the Department of Civil Service to develop a plan for preventing future waiver of required co-payments. The Comptroller took no independent enforcement action.

In response, Handler and South Island filed separate combined CPLR article 78 and declaratory judgment actions against the Comptroller and United, challenging the Comptroller's authority to audit their books. Handler's petition sought to enjoin both respondents from publishing the results of the audit, implementing its recommendations, withholding future payments to Handler's patients, and offsetting the amounts allegedly overpaid. South Island's petition sought to "set aside the audit" and enjoin United from collecting any alleged overpayments.

Supreme Court granted the petitions in part and enjoined United from taking action based on the audit results. In separate decisions, Supreme Court concluded that the Comptroller lacked constitutional authority to audit the providers because the providers are "not a political subdivision of the State."

The Appellate Division found that Supreme Court erred in determining that the Comptroller lacked authority to audit the parties and, in separate opinions, modified both orders to reinstate the audits (see *Matter of Martin H. Handler, M.D., P.C. v DiNapoli*, 88 AD3d 1187 [3d Dept 2011]; *Matter of South Is. Orthopaedic Group, P.C. v DiNapoli*, 88 AD3d 1186 [3d Dept 2011]). According to the Appellate Division, the Comptroller has a constitutional duty to audit payments made by the State, and, as a part of that duty, the Comptroller has the authority to conduct post-audit reviews of payments made to petitioners. If the Comptroller lacked authority to audit health care providers' payment records, "no other entity . . . would retain oversight" to prevent overpayments that result from waived co-insurance fees (*Handler*, 88 AD3d at 1191 n). The Appellate Division remitted the cases to Supreme Court for further proceedings to address petitioners' claims that the audit findings were arbitrary and capricious and lacked a rational basis.

After Supreme Court entered judgment dismissing the petitions, Handler and South Island appealed to this Court as of right under CPLR 5601 (d), bringing up the prior orders of the Appellate Division, which involved a substantial constitutional question.

## III

Handler and South Island contend that the Comptroller's audits exceeded the constitutional limitations on its powers found in article V, § 1 of the State Constitution. According to petitioners, as nonparticipants in the Empire Plan, they neither have a contract with the State nor receive state funds, and the Comptroller cannot audit them.

Analysis of the Comptroller's power begins with the "wellspring of [his or her] authority" (*Matter of McCall v Barrios-Paoli*, 93 NY2d 99, 105 [1999]), namely article V, § 1 of the State Constitution, which reads:

> "The comptroller shall be required: (1) to audit all vouchers before payment and all official accounts; (2) to audit the accrual and collection of all revenues and receipts; and (3) to prescribe such methods of accounting as are necessary for the performance of the foregoing duties. The payment of any money of the state, or of any money under its control, or the refund of any money paid to the state, except upon

audit by the comptroller, shall be void, and may be restrained upon the suit of any taxpayer with the consent of the supreme court in appellate division on notice to the attorney-general. In such respect the legislature shall define the powers and duties and may also assign to him or her: (1) supervision of the accounts of any political subdivision of the state; and (2) powers and duties pertaining to or connected with the assessment and taxation of real estate, including determination of ratios which the assessed valuation of taxable real property bears to the full valuation thereof, but not including any of those powers and duties reserved to officers of a county, city, town or village by virtue of sections seven and eight of article nine of this constitution. The legislature shall assign to him or her no administrative duties, excepting such as may be incidental to the performance of these functions, any other provision of this constitution to the contrary notwithstanding."

New York has had an independent audit authority since colonial days, when the office of Auditor-General oversaw the colonial fisc (*see* 1938 Rep of NY Constitutional Convention Comm, vol 8 at 112-113). The Constitutional Convention of 1821 made the Comptroller a constitutional officer, but the State Constitution did not prescribe the Comptroller's powers and duties until 1915, when the Constitutional Convention promulgated the predecessor to article V, § 1 of the present Constitution (*id.* at 113, 120). In 1925, the Constitution was amended to reassign "duties of an administrative nature" from the Comptroller to other agencies (*Blue Cross & Blue Shield of Cent. N.Y. v McCall*, 89 NY2d 160, 167 [1996] [internal quotation marks omitted]). By requiring the Comptroller to audit state payments and receipts, and prohibiting the Legislature from assigning administrative tasks to the office, the provision protects "the independent character of the Comptroller's audit function" (*Matter of McCall*, 93 NY2d at 107). Indeed, "[a]ll of the duties defined within article V, § 1, whether required or discretionary, are in furtherance of the fundamental duty of the office to '[s]uperintend the fiscal concerns of the state' " (*Blue Cross & Blue Shield*, 89 NY2d at 166, citing State Finance Law § 8 [1]; 1938 Rep of NY Constitutional Convention Comm, vol 4 at 337).

With Civil Service Law § 167 (7), the Legislature authorized the Comptroller to audit payments to the State's health insurance vendors:

> "The amounts required to be paid to any contracting corporation under any contract [with NYSHIP] shall be payable from such health insurance fund as audited by and upon the warrant of the comptroller."

Further, the Legislature has granted the Comptroller broad subpoena powers in furtherance of the Comptroller's investigatory functions under State Finance Law § 9, which states:

> "The comptroller, deputy comptrollers and assistant deputy comptroller, or either of them, may issue a subpoena or subpoenas requiring a person or persons to attend before the comptroller, a deputy comptroller or assistant deputy comptroller and be examined in reference to any matter within the scope of the inquiry or investigation being conducted by the comptroller, and, in a proper case, to bring with him, a book or paper."

Thus, both the Constitution and statutes require the Comptroller to ensure proper billing and payment for the Empire Plan. In order to accomplish its legally mandated duties to prevent unauthorized payments and overpayments, the Comptroller must perform both pre- and post-audit review of Empire Plan payments.

Handler and South Island concede that the Comptroller has the authority to audit United, and it surely does (see Civil Service Law § 167 [7]; State Finance Law § 9). However, Handler and South Island argue that the Comptroller cannot review their business records as part of its auditing function because they receive state funds indirectly, through United, and, ultimately, Empire Plan members. In essence, they argue, United's role as a conduit severs any connection between the state funds and the petitioners' billing practices, putting the records beyond the Comptroller's reach.

The Constitution does not limit the Comptroller's authority in this way. Handler and South Island receive state insurance funds in exchange for services rendered to state insurance beneficiaries. The fact that the State relies on a third-party conduit, United, does not change the character of the funds. They remain state dollars directed to pay health care costs incurred by state

beneficiaries and charged by Handler and South Island. Petitioners would limit the scope of the Comptroller's auditing power to the records of the initial recipient of state funds—United only. This would make the Comptroller's task impossible. Reviewing a provider's billing records is the only way to ensure that the provider has been collecting the required co-payment, and United has no way of obtaining those records.

Moreover, the record suggests that Handler and South Island understand that they are not as far removed from the State's purse as they argue. Billing records from both providers reveal that they code United insurance payments as payments from the insurer rather than from the patient. The providers also are given an opportunity to lower their rates when their actual fee exceeds the customary charge. The providers know that their payments are coming from the State's coffers, and they understand that accepting these payments requires the collection of co-payments. In short, Handler and South Island are fully aware of the claim payment structure, they receive state funds in exchange for services, and their records are subject to review by the Comptroller.

Our prior case law does not mandate a different outcome. In past cases, we have recognized that the Constitution places limitations on the Legislature's power to delegate new roles and duties to the Comptroller. Here, the audits fulfill the Comptroller's core duty as the "independent auditing official for the affairs of the State" (*Matter of Dinallo v DiNapoli*, 9 NY3d 94, 101 [2007]; *Patterson v Carey*, 41 NY2d 714, 723 [1977]). The results in those cases thus have no bearing on the issue currently before us.

In *Matter of New York Charter Schools Assn., Inc. v DiNapoli* (13 NY3d 120 [2009]), we held that the Legislature violated the Constitution when it required the Comptroller to conduct a performance audit of charter schools. We stated that charter schools are "funded primarily with public monies" but are not "political subdivisions of the State" (*id.* at 127-129). We concluded that the Constitution did not permit the Comptroller to "audit the performance of charter schools, and perhaps question the wisdom of how charter schools provide instruction" as a part of its post-audit authority over State funds (*id.* at 133).

By contrast, petitioners' cases do not involve performance audits. Rather, the Comptroller audited Handler and South Island's billing records to ensure that the State has paid only

what it owes so as to avoid overpayments. In short, the Comptroller's audits followed payments made to Handler and South Island and were not designed to evaluate the providers' health care practices.

In *Blue Cross & Blue Shield*, we held that the Legislature could not require the Comptroller to conduct Insurance Law article 43 audits of private insurers (*Blue Cross & Blue Shield*, 89 NY2d at 171). We concluded that such audits were among the administrative duties of the State Insurance Department and could not be delegated to the Comptroller without violating article V. Those audits were "not incidental to the supervision of the fiscal affairs of the State" (*id.* at 167).

Here, the Comptroller has not exercised the administrative functions of a different agency. Petitioners argue otherwise, contending that other state entities are responsible for ferreting out insurance fraud. However, the audits at issue tracked only billing and payment. It may be the case that the information revealed as a result of the audits provides the basis for some investigation into fraudulent conduct and practices, but that does not make the Comptroller's actions unlawful or divest the Comptroller of its core authority to superintend the fisc.

In *Matter of Dinallo*, we held the Legislature could not assign to the Comptroller oversight of the New York State Insurance Department Liquidation Bureau. We concluded that the Bureau was not a state agency, and "the liquidation of a distressed insurer has no impact on the state fisc" and therefore "does not implicate the Comptroller's constitutional and statutory authority to superintend the fiscal affairs of the State" (*Matter of Dinallo*, 9 NY3d at 102). Here, however, there is no question that the overpayment of health care bills implicates the state fisc. The State pays for all health care services provided to the State's health insurance plan members.

As these three cases make clear, the Comptroller may act within its role as the superintendent of the state fisc, but it cannot perform tasks that are beyond that role. The Comptroller cannot conduct performance audits of an entity that is not a political subdivision of the State; it cannot perform the administrative duties of another state agency; and it cannot oversee activities that, while financial in nature, have no impact on the state fisc.

Handler and South Island rely on their status as nonparticipating providers for their arguments that the Comptroller

cannot review their bills. In these cases, we need not decide the expanse of the Comptroller's auditing power over third parties because here the exercise of the Comptroller's power is sufficiently narrow in scope and properly focused on billing records for state payments. The Comptroller seeks information not available from United alone and which is critical to the Comptroller's audit of bills paid with state funds. It would be a very different case if the Comptroller sought unlimited access to records, including those that implicate the quality of petitioners' medical services. However, the Comptroller has reviewed only petitioners' billing records to ensure that the State has not overpaid on health insurance claims. Preventing overpayment is a core aspect of the Comptroller's constitutional mantle.

The Comptroller's limited examination of petitioners' billing records amounted to a post-audit of state payments and was permitted by the Constitution. Accordingly, the judgments of Supreme Court and the prior orders of the Appellate Division brought up for review should be affirmed, with costs.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and ABDUS-SALAAM concur.

In each case: Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.