Matter of Mid Is. Therapy Assoc., LLC v DiNapoli (2019 NY Slip Op 02401)





Matter of Mid Is. Therapy Assoc., LLC v DiNapoli


2019 NY Slip Op 02401


Decided on March 28, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 28, 2019

526685

[*1]In the Matter of MID ISLAND THERAPY ASSOCIATES, LLC, Doing Business as ALL ABOUT KIDS, Appellant,
v
THOMAS P. DiNAPOLI, as State Comptroller, et al., Respondents.

Calendar Date: February 11, 2019

Before: Garry, P.J., Lynch, Clark, Devine and Pritzker, JJ.


Shebitz Berman & Delforte, PC, New York City (Frederick J. Berman of counsel), for appellant.
Letitia James, Attorney General, Albany (Frederick A. Brodie of counsel), for respondents.



MEMORANDUM AND ORDER
Lynch, J.
Appeal from a judgment of the Supreme Court (Fisher, J.), entered October 27, 2017 in Albany County, which dismissed petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to, among other things, set aside respondent Comptroller's audit of petitioner's consolidated fiscal reports for certain school years.
Petitioner provides special education itinerant teaching (hereinafter SEIT) services to preschool children with disabilities through contracts with the New York City Department of Education and the Counties of Westchester, Nassau and Suffolk. The municipalities are reimbursed by the state through respondent State Education Department (hereinafter SED) for 59.5% of the cost for these services. In previous rate disputes, we explained that "petitioner's services are measured in 30 minute service units, petitioner is paid a prospective rate during the school year and a reconciliation rate is determined after the school year based on actual costs. Where the reconciliation rate differs from the prospective rate that was used, the service provider must pay back the funds if it was overpaid and it receives additional reimbursement if underpaid. . . . Significantly, the reconciliation rate, which is established per service unit, is calculated by dividing a service provider's total costs by total units for a school year. This rate is calculated after a provider, such as petitioner, supplies [SED] with an independently audited Consolidated Fiscal Report (hereinafter CFR) and supporting independently audited financial statements" (Matter of Mid Is. Therapy Assoc., LLC v New York State Educ. Dept., 129 AD3d 1173, 1173-1174 [2015], citing Matter of Mid Is. Therapy Assoc., LLC v New York State Dept. of Educ., 99 AD3d 1082, 1082 [2012]). Following this process, SED calculated a final tuition rate of $48 per unit for school years 2010-2011, 2011-2012 and 2012-2013.
In 2014, respondent Comptroller initiated an audit of petitioner's reported costs on its CFR for the 2012-2013 school year and then expanded the audit to the 2010-2011 and 2011-2012 school years. In a final audit report, the Comptroller recommended disallowing $655,055 in reported costs — out of $10,577,083 in reimbursement sought by petitioner — for failing to comport with SED's Reimburseable Cost Manual (hereinafter the manual). SED accepted the recommendation and disallowed the costs, resulting in a reduced rate of reimbursement. In May 2016, petitioner commenced this combined proceeding pursuant to CPLR article 78 and action for declaratory judgment challenging the Comptroller's authority to conduct the audit and the resulting disallowance as arbitrary and capricious. Following joinder of issue, Supreme Court dismissed the petition on the merits. Petitioner now appeals.
Petitioner first maintains that the Comptroller lacked the constitutional authority to perform the audit in the first instance. We disagree. The Comptroller's audit power emanates from article V, § 1 of the NY Constitution, which provides that "the [C]omptroller shall be required . . . to audit all vouchers before payment and all official accounts. . . . The payment of any money of the state, . . . except upon audit by the [C]omptroller, shall be void." Further, "the [L]egislature shall define the powers and duties" of the Comptroller and "shall assign to [the Comptroller] no administrative duties, excepting such as may be incidental to the performance of these functions" (NY Const, art V, § 1; see State Finance Law § 111; Matter of Martin H. Handler, M.D., P.C. v DiNapoli, 23 NY3d 239, 245-246 [2014]; Matter of McCall v Barrios-Paoli, 93 NY2d 99, 105 [1999]). In 2013, the Legislature found that "special education service programs for preschool children with disabilities have been susceptible to fraud and abuse" (L 2013, ch 545, § 4). The Legislature then enacted Education Law § 4410-c, which directs the Comptroller to "audit the expenses reported to [SED] by every program provider of special education services for preschool children with disabilities in the state" and to audit every provider at least once by March 31, 2018 (Education Law § 4410-c [1]). Upon SED's request, the Comptroller completed the audit under review here.
In Matter of Martin H. Handler, M.D., P.C. v DiNapoli (23 NY3d at 249), the Court of Appeals explained that "the Comptroller may act within its role as the superintendent of the state fisc, but it cannot perform tasks that are beyond that role. The Comptroller cannot conduct performance audits of an entity that is not a political subdivision of the [s]tate; it cannot perform the administrative duties of another state agency; and it cannot oversee activities that, while financial in nature, have no impact on the state fisc." Applying that standard, the Court of Appeals determined that the Comptroller was constitutionally and statutorily authorized to audit payments of state funds paid to the state's health insurance vendors (id.).
Petitioner challenges Education Law § 4410-c as an unconstitutional delegation of SED's administrative duties to the Comptroller (see Blue Cross & Blue Shield of Cent. N.Y. v McCall, 89 NY2d 160, 167 [1996]) and as an unconstitutional performance audit (see Matter of New York Charter Schools Assn., Inc. v DiNapoli, 13 NY3d 120, 133 [2009]). As in Handler, we find that Education Law § 4410-c does not constitute an unconstitutional delegation of administrative duties to the Comptroller. To the contrary, the specific statutory directive authorizing the Comptroller to audit the expenses of the SEIT program embraces "the Comptroller's core duty as the independent auditing official for the affairs of the [s]tate" (Matter of Martin H. Handler, M.D., P.C. v DiNapoli, 23 NY3d at 245 [internal quotation marks and citation omitted]). There is little doubt that petitioner knows that SED provides significant state monies to fund this program, and it matters not that the involved municipalities are reimbursed by SED, because the funds constitute state dollars expended to benefit preschool children (id. at 247-248). Nor can this audit be fairly characterized as a performance audit. To the contrary, the audit expressly evaluated the expenses submitted by petitioner, as specifically authorized by Education Law § 4410-c (1).
As to the merits, our review is limited to whether the Comptroller's determinations have a rational basis or were arbitrary and capricious (see Matter of Mid Is. Therapy Assoc., LLC v New York State Educ. Dept., 129 AD3d at 1175). The Comptroller disallowed several categories of salary-related costs as lacking appropriate documentation. Specifically, the [*2]Comptroller disallowed a portion of the salaries attributed to petitioner's co-owners, Catherine Grossfeld, who served as the executive director, and Michael Grossfeld, who served as the division director. Petitioner allocated a percentage of the Grossfelds' salaries to the SEIT program, listing them as "employees" in the CFRs. Under the manual, salaries of employees who perform tasks for more than one program must be allocated among the programs. Compensation costs must be based on contemporaneously prepared employee time records. The preferred method to allocate salaries is based on actual hours of service. Acceptable documentation includes "payroll records or time studies," but when such records cannot be completed, "alternative methods that are equitable and conform to generally accepted accounting principles may be utilized."
The Comptroller's audit revealed that petitioner did not submit either payroll records or time studies to document the allocation of the Grossfelds' services to the SEIT program. Further, the Comptroller rejected the alternative documentation submitted, consisting of activity logs, calendar entries and the like, as incomplete and not made contemporaneously with the actual services performed. Similarly, the Comptroller rejected the salary allocations for the 2010-2011 and 2011-2012 school years as based on inadequately documented estimates. As a result, the Comptroller recalculated the salary allocation based on the manual's recommended ratio value method. In our view, the Comptroller's determination was in accord with the plain language of the manual and was rational (see Matter of Mid Is. Therapy Assoc., LLC v New York State Educ. Dept., 129 AD3d at 1175). Even though the Grossfelds were co-owners of petitioner, they identified themselves as "employees" on the CFRs for all three school years and sought reimbursement based on that classification.
The Comptroller also recommended disallowing staff salaries allocated in excess of petitioner's own time studies. Upon review of time studies requested for 50 employees, the Comptroller found that 22 properly reported employees' salaries. The Comptroller otherwise determined that petitioner improperly included employee time spent as early intervention coordinators in the SEIT allocation. As explained in a supporting affidavit from the Director of Special Education Fiscal Services for SED, these transition services related to the early intervention program overseen by the Department of Health. Although petitioner maintained that these services were undertaken to further the SEIT program, the Comptroller's determination was certainly rational.
The Comptroller's further recommendation to disallow retroactive raises to petitioner's SEIT providers for the 2012-2013 school year also has a rational basis. The pay raises were not made until the spring of 2014, but were included in the CFR as expenses for the 2012-2013 school year. Petitioners maintain that the decision to provide the raises was made in January 2013 and booked as accrual as a June 30, 2013 year-end adjustment, but there was no formal board resolution to that effect, the employee agreements did not reflect the raise and the raise was not announced to the staff. As such, the Comptroller could rationally conclude that the raises were not adequately documented.
We also find that the Comptroller properly recommended retroactive application of the disallowances because, as noted above, "the service provider must pay back the funds if it was overpaid" (Matter of Mid Is. Therapy Assoc., LLC v New York State Educ. Dept., 129 AD3d at 1174). Contrary to petitioner's argument, the prior limited audits of petitioner did not preclude this audit by the Comptroller. The record further demonstrates that the Comptroller conducted a risk assessment before initiating the audit as required under Education Law § 4410-c (2) (a). Petitioner has not demonstrated that the Comptroller failed to adhere to generally accepted governmental auditing standards in performing the audit. Nor are we persuaded by petitioner's contention that the audit was biased given the specific disallowance of expenses for lack of appropriate documentation (see Matter of Buffalo Teachers Fedn., Inc. v Elia, 162 AD3d 1169, 1176 [2018], lv denied 32 NY3d 915 [2019]).
Garry, P.J., Clark, Devine and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed, without costs.