Joseph v Corso (2024 NY Slip Op 05170)

Joseph v Corso

2024 NY Slip Op 05170

Decided on October 17, 2024

Appellate Division, Third Department

Lynch, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 17, 2024

CV-23-1477

[*1]Wayne Joseph et al., Appellants,
v
Rebecca Corso et al., Respondents, et al., Defendant.

Calendar Date:September 11, 2024

Before: Aarons, J.P., Lynch, Ceresia, McShan and Mackey, JJ.

Harris Beach PLLC, Uniondale (Roy W. Breitenbach of counsel), for appellants.
Letitia James, Attorney General, Albany (Frederick A. Brodie of counsel), for respondents.

Lynch, J.
Appeal from an order of the Supreme Court (Roger D. McDonough, J.), entered July 14, 2023 in Albany County, which, among other things, denied plaintiffs' cross-motion for summary judgment.
In 2014, the Legislature passed the "Surprise Bill Law" (L 2014, ch 60, part H, § 26) which, among other things, protects insureds from being billed directly for healthcare services they did not know were being performed by an out-of-network provider (see Financial Services Law §§ 603 [h]; 606 [a]). Under the law, the "health care plan" of an insured who receives a surprise bill is liable for the costs of the out-of-network services and may attempt to negotiate a reimbursement amount that is less than the amount billed (Financial Services Law § 607 [a] [1], [2]). "If the health care plan's attempts to negotiate . . . do[ ] not result in a resolution of the payment dispute . . . , the health care plan shall pay the non-participating provider an amount the health care plan determines is reasonable for the health care services rendered, except for the insured's co-payment, coinsurance or deductible" (Financial Services Law § 607 [a] [3]). The law also contains an independent dispute resolution (hereinafter IDR) process to address payment disputes, which may be invoked by "[e]ither the health care plan or the non-participating provider" if certain conditions are met (Financial Services Law 607 [a] [4]). When invoked, the IDR process assigns the dispute to an independent arbitrator to determine the reasonable fees for services rendered by an out-of-network provider utilizing the factors outlined in Financial Services Law § 604 and the FAIR Health benchmarking database (see Financial Services Law § 607 [a] [4], [6]).
Beginning in 2015, the Empire Plan — a self-funded government health insurance program established in 1986 by the New York State Health Insurance Program (hereinafter NYSHIP) for the state's public employees (see Matter of Martin H. Handler, M.D., P.C. v DiNapoli, 23 NY3d 239, 243 [2014]) — utilized the IDR process set forth in the Surprise Bill Law to resolve payment disputes with out-of-network providers for surprise bills. However, after the US Congress passed the federal No Surprises Act in 2020 (see 42 USC § 300gg-111 et seq.) — a statute substantively similar to the state's Surprise Bill Law — the Empire Plan began using the IDR process set forth in the federal law,[FN1] which uses different benchmarks to determine the reasonable fees to be paid to an out-of-network provider by an insured's health care plan (see 42 USC §§ 300gg-111 [c]).[FN2]
Plaintiffs — out-of-network healthcare practices and individual members of the Empire Plan — commenced this action challenging the Empire Plan's use of the federal IDR process set forth in the No Surprises Act, contending that, under Civil Service Law § 162, the Empire Plan is subject to the Surprise Bill Law and the associated state IDR process. They seek a declaration to that effect and an injunction prohibiting the [*2]Empire Plan's use of the federal IDR process when resolving payment disputes for surprise bills. Following joinder of issue and motion practice, Supreme Court, among other things, denied plaintiffs' request for injunctive relief and declared that "Civil Service Law § 162 and the Surprise Bill Law do not require that New York's IDR process be available to resolve out-of-network disputes involving the Empire Plan." Plaintiffs appeal.[FN3]
This dispute turns on a straightforward application of the state Surprise Bill Law and the associated federal No Surprises Act. Like the state Surprise Bill Law, the federal No Surprises Act "was passed in 2020 to end surprise medical billing" (Association of Air Med. Servs. v United States Dept. of Health & Human Servs., ___ F Supp 3d ___, 2023 WL 5094881, *1 [Dist DC 2023]) and "addresses the payment of . . . out-of-network providers by group health plans or health insurers" with respect to surprise bills (Texas Med. Assn. v United States Dept. of Health & Human Servs., 587 F Supp 3d 528, 533 [ED Tex 2022], appeal dismissed 2022 WL 15174345 [5th Cir 2022]). Pertinent here, the No Surprises Act "requires insurers to reimburse out-of-network providers at a statutorily calculated out-of-network rate," which is "either the amount agreed to by the insurer and the out-of-network provider or an amount determined through" the federal IDR process (id. at 533-534 [internal quotation marks omitted]). However, the federal IDR process is inapplicable in states "with an All-Payer Model Agreement" (id. at 534) or a "specified state law that meets certain criteria regarding the provision of an alternative IDR process" (Neurological Surgery Practice of Long Isl., PLLC v United States Dept. of Health and Human Servs., 682 F Supp 3d 249, 262 [ED NY 2023]; see 42 USC § 300gg-111 [a] [3] [k] [i]). Under the Act, specified state law means "a State law that provides for a method for determining the total amount payable" under a "group health plan or group or individual health insurance coverage offered by a health insurance issuer . . . (to the extent such State law applies to such plan, coverage, or issuer)" for "an item or service furnished by a nonparticipating provider or nonparticipating emergency facility" (42 USC § 300gg-111 [a] [3] [I] [emphasis added]). Since the state Surprise Bill Law sets forth a method for determining the total amount payable by a health care plan for a surprise bill, the issue distills to whether the Empire Plan constitutes a health care plan within the embrace of that law (see Neurological Surgery Practice of Long Island, PLLC v United States Dept. of Health and Human Servs., 682 F Supp 3d at 262).
Under the state Surprise Bill Law, the term "[h]ealth care plan" is defined narrowly to include only "an insurer licensed to write accident and health insurance pursuant to [Insurance Law article 32]; a corporation organized pursuant to [Insurance Law article 43]; a municipal cooperative health benefit plan certified [*3]pursuant to [Insurance Law article 47]; a health care maintenance organization certified pursuant to [Public Health Law article 44]; or a student health plan established or maintained pursuant to [Insurance Law § 1124]" (Financial Services Law § 603 [c]). Unlike the Empire Plan, each of these five entities is either authorized to conduct insurance business in New York, provides insurance through a purchased policy or HMO, or provides health benefits to municipal employees or students (see Civil Service Law § 162 [1] [b] [iv]; Insurance Law §§ 1101 [b] [6]; 3201; 4301; 4702; Public Health Law § 4400). Defendants argue that, because the Empire Plan is not one of the entities listed in Financial Services Law § 603 (c), the state IDR process is inapplicable and the federal IDR process controls. Notably, plaintiffs do not dispute that the Empire Plan is not one of the health care plans listed in Financial Services Law § 603 (c). Rather, they argue that Civil Service Law § 162 subjects the Empire Plan to state insurance laws and regulation by the Department of Financial Services (hereinafter DFS), rendering use of the state IDR process appropriate. We are constrained by the plain language of Financial Services Law § 603 (c) to reject plaintiffs' argument.
The Empire Plan is a self-funded government health plan established under Civil Service Law § 162. It is neither an insurer nor contracts with an insurer to provide health benefits to its members (see Civil Service Law § 162 [1] [b] [iv]; Insurance Law § 1101 [b] [6]).[FN4] That said, unlike other self-funded plans, the Empire Plan is subject to certain provisions of the Insurance Law, including providing "coverage mandated pursuant to [Insurance Law article 43] . . . assuring uninterrupted continuance of coverage for all covered persons" (Civil Service Law § 162 [1] [b] [i]). The required coverage "shall include but shall not be limited to all benefits, services, rights, privileges and guarantees allowed by law" (Civil Service Law § 162 [1] [b] [i]). Empire Plan participants are also guaranteed the "internal and external review and appeal rights as described in [Insurance Law article 49]" pertaining to, among other things, final adverse determinations of the medical necessity of a requested service (Civil Service Law § 162 [1] [b] [ii]; see Insurance Law §§ 4900 [a]; 4910 [a]). Moreover, the Empire Plan's provision of direct benefits is "subject to review by the superintendent of financial services for the purposes of ensuring compliance with applicable insurance law and any and all associated insurance rules and regulations noted in this subdivision" (Civil Service Law § 162 [1] [b] [iv]).
Highlighting the aforementioned provisions, plaintiffs emphasize that, unlike other self-funded plans, the Empire Plan is beholden to certain state insurance laws and DFS regulation. However, the state insurance laws and regulations to which the Empire Plan are subjected do not require use of the state IDR process when [*4]arbitrating disputes about its liability for surprise bills. Nor does the Empire Plan's use of the IDR process set forth in the federal No Surprises Act bear upon or in any way conflict with the state law requirements to which it is subjected under Civil Service Law § 162, including the provision of coverage in accordance with Insurance Law article 43. Although it is difficult to discern why the Legislature excluded the Empire Plan from the reach of the state Surprise Bill Law, the fact remains that, in its current form, the plain language of Financial Services Law § 603 (c) subjects only five specified types of "health care plans" to the state IDR process and the Empire Plan is not one of them (see Pultz v Economakis, 10 NY3d 542, 547 [2008] ["where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning" (internal quotation marks and citations omitted)]). At the same time, the No Surprises Act recognizes that state IDR processes available to address surprise billing disputes may be inapplicable to certain health plans, providing a gap-filling measure to ensure that insureds of excluded plans will also be protected from being billed directly for out-of-network services of which they were unaware.
In support of their argument to the contrary, plaintiffs note that a bill is pending in the Legislature to amend the definition of "health care plan" as set forth in Financial Services Law § 603 (c) to include "any provision of health benefits under" Civil Service Law § 162 (see 2023 NY Senate-Assembly Bill S5638, A7120). Although still in committee, plaintiffs tout this bill as evidence that "the Legislature intended for the New York Surprise Bill Law to apply to the Empire Plan," noting that the justification for the bill is to "clarify[ ] that the term 'Health Plan' in the Financial Service Law . . . include[s] the [NYSHIP/Empire] Plan" (2023 NY Senate-Assembly Bill S5638, A7120 [Statement of Justification]). However, proposed legislation that has not made it out of committee cannot supplant the unambiguous language of Financial Services Law § 603 (c) and does not demonstrate legislative intent at the time that provision was enacted (see generally Aybar v Aybar, 37 NY3d 274, 291 n 9 [2021]; Matter of LeadingAge New York v Shah, 32 NY3d 249, 265 [2018]). In fact, the legislative history surrounding the state Surprise Bill Law tends to support the opposite conclusion than the one advanced by plaintiffs.
In that regard, we note that part H of the Laws of 2014, chapter 60 — which enacted the state Surprise Bill Law — also added a new section 24 to the Public Health Law governing certain disclosures health care practices are required to make to patients. The term "[h]ealth care plan," as used in the new section of the Public Health Law, was defined to include all the entities listed in Financial Services Law § 603 (c) as well as "self-funded employee welfare benefit plans" (L 2014, ch 60, part H, § 17). By contrast[*5], the term "health care plan" within the meaning of Financial Services Law article 6 — i.e., the Surprise Bill Law — was more narrowly defined (see L 2014, ch 60, part H, § 26). That the Legislature defined the term "health care plan" differently within the same subsection of legislation that simultaneously enacted both the Surprise Bill Law and Public Health Law § 24 indicates a deliberate choice to narrow the scope of the former (see generally Matter of Orens v Novello, 99 NY2d 180, 187 [2002]). We also note that, in 2022, the Legislature amended certain provisions of the Surprise Bill Law to "enact[ ] . . . major components of legislation relating to the federal [N]o [S]urprises [A]ct" (L 2022, ch 57, part AA, subpart A § 4). The amendments made certain provisions of the state IDR process more in line with the federal IDR process but, tellingly, did not expand the categories of health care plans to which the state Surprise Bill Law applies.
Plaintiffs also suggest that the Empire Plan is estopped from using the federal IDR process due to its prior use of the state IDR process and its statements in various plan documents representing that it was subjected to the Surprise Bill Law. We are unpersuaded. The doctrine of estoppel is generally unavailable against the State acting in its governmental capacity (see Matter of Daleview Nursing Home v Axelrod, 62 NY2d 30, 33 [1984]; Matter of Hamptons Hosp. & Med. Ctr. v Moore, 52 NY2d 88, 93 [1981]). While the doctrine may be applied against the State when it is acting in its proprietary capacity, such an estoppel is limited to cases where "a manifest injustice has resulted from actions taken [by the state] in its proprietary or contractual capacity" and the State's "misconduct has induced justifiable reliance by a party who then changed [their position] to [their] detriment" (Allen v Board of Educ. of Union Free School Dist. No. 20, 168 AD2d 403, 404 [2d Dept 1990], lv dismissed 77 NY2d 939 [1991]; see Shawangunk Reserve Inc., v County of Ulster, 284 AD2d 771, 773 [3d Dept 2001]; see also Branca v Board of Educ., Sachem Cent. School Dist. at Holbrook, 239 AD2d 494, 495-496 [2d Dept 1997]; Carney v Newburgh Park Motors, 84 AD2d 599, 600 [3d Dept 1981]). Such is not the case here.
Although plaintiffs note that the Empire Plan's 2020 network disclosures to enrollees stated that the "surprise bills law requires [t]he Empire Plan to provide information regarding your out-of-network reimbursement" (emphasis added), the No Surprises Act had not taken effect by 2020 and this does not constitute a representation that the Empire Plan would continue using the state Surprise Bill Law even upon the effective date of the comparable federal law. Plaintiffs also highlight a 2021 circular promulgated by DFS — which oversees implementation of the state Surprise Bill Law — advising that, notwithstanding the impending effective date of the recently-enacted federal No Surprises Act, "the New York IDR process will continue [*6]to apply to out-of-network emergency services and surprise bills" since New York has a specified state law on point. Notably, this circular was addressed only to the entities listed in Financial Services Law § 603 (c) and not to plans established pursuant to Civil Service Law § 162.[FN5] In a sworn affidavit contained in the record, Daniel Yanulavich — Director of the Employee Benefits Division of the Department of Civil Service, which administers NYSHIP — explained that "the Empire Plan previously submitted out-of-network billing disputes to the [s]tate IDR process . . . in recognition of the need to provide consumer protections in the absence of any alternate means of providing those protections" and not as a "consequence of a specified legal obligation" to do so. From our perspective, the Empire Plan's prior use of the state IDR process did not preclude it from using the federal IDR process upon the enactment of the No Surprises Act. The subsequent enactment of that law, which still shifts the burden for surprise bills from the patient to the health care plan and recognizes that available state IDR processes may be inapplicable to specific plans, serves as a reasoned explanation for the Empire Plan's change in course (see generally Matter of Richardson v Commissioner of N.Y. City of Dept. of Social Servs., 88 NY2d 35, 39 [1996]; compare Matter of United University Professions v State, 36 AD3d 297, 299 [3d Dept 2006]). In light of our determination that the Empire Plan is not required to use the IDR process of the Surprise Bill Law, plaintiffs' argument that it is entitled to a permanent injunction is academic.
Aarons, J.P., Ceresia, McShan and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The effective date of the federal No Surprises Act was January 1, 2022. The Empire Plan began using the federal IDR process that year.
Footnote 2: Plaintiffs maintain that use of the federal IDR process set forth in the No Surprises Act has decreased their reimbursement amounts by more than 80%.

Footnote 3: In its decision on appeal, Supreme Court also granted a motion by defendant UnitedHealthCare Insurance Company of New York, Inc. (hereinafter United) — the program administrator of the Empire Plan Medical/Surgical Program — to dismiss the complaint against it. Plaintiffs do not challenge this ruling on appeal, abandoning any such issue (see Currie v Oneida Health Sys., Inc., 222 AD3d 1284, 1291 [3d Dept 2023]).

Footnote 4: The Empire Plan does contract with United for the purpose of processing and paying claims, but the "State covers its full cost [of the health services] and . . . United merely passes state money to the proper payees" (Matter of Martin H. Handler, M.D., P.C. v DiNapoli, 23 NY3d at 243).

Footnote 5: We further note that DFS' website — of which we may take judicial notice (see Matter of Executive Cleaning Servs. Corp. v New York State Dept. of Labor, 193 AD3d 13, 18 n 4 [3d Dept 2021]) — expressly states that "[t]he [f]ederal protections from surprise medical bills apply if your employer self-funds your coverage," making clear that state protections do not apply in that circumstance (Department of Financial Services, Consumer Protection Under the Federal No Surprises Act, available at 
https://www.dfs.ny.gov/consumers/health_insurance/protections_federal_no_surprises_act#:~:text=The%20Federal%20protections%20from%20surprise,coverage%20is%20probably%20self%2Dfunded [last accessed Oct. 10, 2024]).